STATE *EX REL.* MYERS v. APPLEBY.

1. *Mandamus* only issues when there is a specific legal right or a positive duty to be performed, and when there is no other appropriate remedy.
2. A written order by the auditor on the county commissioners, endorsed by them "Examined and approved," is not an audit of an itemized and verified account as required by law.
3. Where an audit by the board of county commissioners of an irregular claim appears on the face of the paper, it will not be presumed that their action was based on other proofs and in accordance with the requirements of law.
4. A finding by the commission appointed to investigate the indebtedness of Colleton County, is not binding upon one who did not submit his claim to this commission.
5. But such claim having been submitted to a referee selected by the claimant and the board of county commissioners, this referee was in effect an arbitrator, and his award against the validity of the claim is binding on the claimant.
6. A delay of eight years in demanding by suit the payment of a county claim is such laches as will cause the court to refuse a writ of mandamus.

   MR. CHIEF JUSTICE SIMPSON concurred in the result, and also MR. JUSTICE McIVER upon the ground of laches.

Before FRASER, J., Colleton, February, 1885.

The opinion fully states the case.

*Mr. W. Perry Murphy,* for appellant.

*Messrs. Edwards & Tracy,* contra.

July 6, 1886.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN. On January 10, 1876, W. A. Paul, the then auditor of Colleton County, drew an order on the county commissioners of that county as follows: "To County Commissioners—Gentlemen: You will please pay to W. F. Myers, or order, the sum of three hundred and fifty dollars for clerical services rendered in this office from July 1, to November 20, 1875. The same to be paid out of funds appropriated for this office. Very respectfully, (Signed), W. A. Paul, county

auditor." This order was indorsed: "February 4, 1876. Examined and approved. (Signed), Frank Youngblood, W. M. Shuler, Wm. A. Driffle, chairman, county commissioners."

During the same year payments were made, aggregating $170, leaving a balance unpaid in the summer of 1877 of $180, when the claim was rejected by a "commission" appointed for Colleton County by the governor, under an act of the legislature entitled "An act to investigate and ascertain the actual *bona fide* indebtedness of the various counties in the State, and to regulate the manner of paying the same," 16 *Stat.*, 311. It seems that at that time the claim went out of the list of county debts, and since then every board of county commissioners for Colleton County has refused to pay the claim as illegal and void. In 1883, another effort was made to ascertain all just claims against the County of Colleton. W. P. Howell, Esq., was appointed referee as to all disputed county claims, and this claim being submitted to him he rejected it, and refused to re-instate it in the list of the unpaid indebtedness of the county, on the ground that "the claim was for clerical services rendered in the county auditor's office. The A. A. of 1871 (*Gen. Stat. of* 1872, p. 78) provided for the payment of 'assistant assessors,' to enable the auditors to complete the assessment within the time provided by law. Even if Myers was an 'assessor,' he has been paid more than the amount he would have received as such. (Signed) W. P. Howell, referee."

After this, on September 24, 1884, application was made for a writ of mandamus, requiring the defendants, the present county commissioners of Colleton County, to pay the balance of said claim. The commissioners answered, denying the right of the petitioner to have the writ of mandamus upon various grounds, and among them, that the claim is wholly null and void, the services therein charged for not being allowed by law, or verified or itemized as required ; that the claim had been rejected by the "commission" appointed by the governor, under the act of the legislature aforesaid, and by every subsequent board of county commissioners ; "that the respondents are advised that it appears by reference to the records in the county auditor's office that more than one thousand dollars has already been paid for assistant assessors for the fiscal year against which said claim is charged ;"

and denying that it is the plain legal duty of the respondents to pay said claim in preference to other claims, or to pro rate the claims against the county. This return was not traversed, and the facts stated must be taken to be true.

Judge Fraser granted the writ of mandamus, and the county commissioners appeal to this court, upon the following grounds: "1. Because it was not the plain legal duty of the county commissioners to pay the relator's claim. 2. Because the relator, having submitted the *bona fides* of his claim to the board of county commissioners, appeal and not mandamus was the remedy. 3. Because the services charged for in relator's claim, to wit, county auditor's clerk, is not a proper charge against the county. The claim is null and void, and payment should not be compelled by mandamus."

Mandamus is a high prerogative writ—the highest known to the law—and according to all the authorities, only issues when there is a specific legal right or a positive duty to be performed, and when there is no other appropriate remedy. When the legal right is doubtful or the performance of the duty rests in discretion or there is other adequate remedy, the writ of mandamus cannot rightfully issue. *Ex parte Mackey*, 15 *S. C.*, 322. Has the relator, Myers, a specific legal right, clear and beyond doubt, to require the present board of county commissioners to cause to be paid the balance of his claim as a plain ministerial duty resting upon them?

For obvious reasons the law is very particular in its requirements that the county commissioners shall audit none but strictly county claims; and that all accounts for labor performed, fees, services, and disbursements, &c., shall be made out in items, and be accompanied with an affidavit of a particular character, and that no allowance beyond legal claims shall ever be made. There can hardly be a doubt that this claim was not properly audited. There was no itemized account, but simply a written order of the auditor that the commissioners should pay the relator his check, $350, "for clerical services rendered in his office from July 1st, to November 20th, 1875;" upon which order the commissioners simply made the endorsement, "examined and approved." This was not such an examination as is required by the word "audit."

Nor do we think that this is one of those cases in which it should be presumed that the officers did their duty, for the requirement of the law is positive, and there is no room for "presumption" as their action in the matter actually appears.

But this is not a proceeding to set aside the alleged audit, and, assuming that the claim was of such a character as to require the exercise of discretion and judgment on the part of the commissioners in making their audit, then their approval, although possibly irregular and erroneous, was quasi judicial and originally binding upon the county until set aside on the ground of mistake or fraud. *Richland County* v. *Miller, Clerk of Commissioners*, 16 *S. C.*, 236. It does not, however, necessarily follow that the relator may at any future time or under any and all circumstances, have the writ of mandamus to enforce payment of his claim. "In such proceeding (mandamus) the defendant may excuse himself by showing that the relator on his own showing is not entitled to the writ, or by traversing some material fact alleged, or by alleging fresh matter as an answer to the prosecutor's case." 2 *R. & L. Law Dict.*, title *Mandamus*.

We do not think that the rejection of this claim by the "commission" appointed by the governor, under the "Act to investigate and ascertain the actual *bona fide* indebtedness of the several counties of the State, and to regulate the manner of paying the same" (16 *Stat.*, 311), should be regarded as a conclusive adjudication of the illegality of the claim. In the case of *Wheeler* v. *County of Newberry* (18 *S. C.*, 132), this court held that "the act of 1877 (16 *Stat.*, 311), authorizing the appointment of a commission to ascertain the indebtedness of the several counties of the State, did not constitute such a commission a court ; and therefore an adjudication by it, upon a claim against the county, not submitted to it by the claimant, is no bar to a subsequent action upon the claim," &c.

But it seems that in 1883, the relator and the then county commissioners made some arrangement by which this claim, along with other disputed or rejected county claims, was referred to M. P. Howell, Esq., as referee, and that he having decided that it was not a valid *bona fide* claim against the county, refused to restore it to the list of the unpaid indebtedness of the county.

The respondents claim that this was certainly a final decision and end of the matter, and that after and in the face of this second rejection, it would not be "their plain duty" to pay the same. The relator admits that under the advice of his counsel he submitted his claim to the referee, but insists that in so doing he reserved all his legal rights, and therefore he is not bound by the decision. He says, "that being delighted to secure his just dues, this claim has been (by advice of counsel and without prejudice to his legal rights) examined by M. P. Howell, Esq., a referee appointed by a subsequent board of county commissioners, and was by him rejected," &c.

It does not very clearly appear what were the precise terms of the reference, but we confess we do not see how the matter could be referred by consent, with the reservation claimed. That could hardly be called "a reference," which was to have no effect whatever, unless the decision was favorable. It seems to us that this voluntary reference was in the nature of a submission to arbitration, and that the parties were bound by the result. The reference to Mr. Howell was not to him as referee under the code, for no cause was pending between the parties. They, however, had a dispute, and they selected an indifferent person as the judge between them. "An arbitrator is a disinterested person to whose judgment or decision matters in dispute are submitted by consent of parties." 3 *Black. Com.*, 16. "Arbitration by consent is effected by a submission. If no action has been commenced concerning the matter in dispute, the submission takes the form of an agreement, called an agreement of submission. * * * An award is conclusive and binding on the parties unless set aside, or the matter is referred back to the arbitrators for re-consideration," &c. 1 *R. & L. Law Dict.*, 103. "As between the parties the award of the arbitrator is the law of the case, and must be regarded as final and conclusive." *Mitchell* v. *De Schamps*, 13 *Rich. Eq.*, 9.

But if in this there should be error, it is manifestly the policy of the law, in reference to the administration of county affairs, to keep separate and distinct the accounts of each fiscal year, chargeable as they are upon the levy for that year; and to that end great promptness is necessary in the presentation and settle-

ment of county claims. Indeed, a recent act of the legislature (1882) declares that "all claims against a county, not presented in the fiscal year in which they are contracted, or the next thereafter, shall be forever barred." In this case the application for the writ of mandamus was not made until September, 1884, nearly nine years after the old board of commissioners endorsed the order of relator, eight years after the last payment thereon, and more than six years after its rejection by the "commission," and formal notice of refusal to pay it. Under these circumstances the respondents insist that "eight years having elapsed since the claim was declared invalid and not a part of the *bona fide* indebtedness of Colleton County, the relator has lost his right to the writ by his laches." The relator insists that there has been no laches on his part as shown by the fact that he has not slept over his rights; but during the whole period indicated continued to demand payment of his claim.

We do not understand that the question is in any way affected by protests, duns, and demands, short of the assertion of a legal right. The question is not whether the relator continued to make the claim, but whether during that time he failed to assert in the proper manner his legal rights. In this respect we are unable to distinguish this case from that of *The State ex rel. Cummings* v. *Kirby* (17 *S. C.*, 564), in which it was said in regard to a state of facts precisely analogous: "There is no special limitation to a proceeding by mandamus, and the statute of limitations does not apply to such a proceeding. The rule, however, is that where there is unreasonable delay the court will, in the exercise of its discretion, refuse to issue the writ (citing the authorities). * * * It is a mistake to suppose, as was argued, that there was a continuing admission of the validity of these claims on the part of the county commissioners, by placing them on the list of the past indebtedness of the county, for that allegation is distinctly denied in the return, which is not traversed. So, too, the return alleges that those claims were decided to be illegal as far back as 1875 (1877), and since that time payment of the same has been frequently refused. We are unable to discover any sufficient, or indeed any reason at all, for this extraordinary laches on the part of the relator, and there-

fore in the exercise of that discretion to which such an application appeals, we feel bound to refuse the writ prayed for, especially as the return, which is not traversed, and which therefore must be taken to be true, points out manifest errors in the accounts upon which these claims are founded,'' &c.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the application for a writ of mandamus refused.

MR. CHIEF JUSTICE SIMPSON concurred in the result; and MR. JUSTICE McIVER concurred upon the ground of the relator's laches in invoking his appropriate legal remedy.[1]