GEORGE W. GLASSCOCK VS. THE COMMISSIONER OF THE GENERAL LAND OFFICE — Appeal from Travis County.

The writ of *mandamus* will not issue against a public officer, unless to compel the performance of an act clearly defined and enjoined by the law, and which is therefore ministerial in its nature, and neither involves any discretion nor leaves any alternative. [2 Tex. 497; 5 Tex. 471; 6 Tex. 475; 7 Tex. 259; 9 Tex. 81; 22 Tex. 559; 28 Tex. 687; 29 Tex. 51.]

The ordinary instrument by which the commissioner of the general land office tests the genuineness of certificates is the report of the investigating commissioners; and this report should be signed by themselves, and returned to the general land office.

This is an application for a *mandamus* to compel the commissioner of the general land office to issue a patent on a survey made by virtue of a certificate for headright, issued by the board of land commissioners of Jasper county to one Henry P. Rock.

The appellant was the assignee of this certificate.

The commissioners appointed under the "act to detect fraudulent land certificates," etc. [Laws of 1840, page 139], transmitted to the commissioner of the general land office no report, under their own signatures, of such certificates issued in Jasper county as they found to be genuine and legal claims against the government.

There were three copies sent to the general land office, of the original report of the commissioners, which remains of record in the office of the county clerk of the county of Jasper, as directed by the 12th section of the law above referred to,

one of which was certified to by A. G. Parker, the clerk of the county at the time when the commissioners made their investigations; the other, by the said clerk and the chief justice of the county; and the third by the chief justice, the sheriff, the clerk of the district court, one of the county commissioners of the examining board, and C. K. Blanchard, then clerk of the county court.

In the two first copies the name of Henry P. Rock is found as entitled to a certificate for a league and labor of land, but in the last copy it does not appear.

The first copy was certified to by the commissioner of the general land office as a true copy of the first class headright certificate issued by the land commissioner of Jasper county, and reported as genuine and legal by the commissioners elected under the "act to detect fraudulent land certificates," etc.

There was verdict and judgment for the defendant below. His motion for a new trial being refused, the plaintiff appealed.

WEBB and GILLESPIE for appellant.

HARRIS (Attorney General) and BREWSTER for appellee.

Chief Justice HEMPHILL, after stating the facts in the case, delivered the following opinion: [Mr. Justice LIPSCOMB, not having been present at the argument, gave no opinion.]

The difficulties arising in the land office, in relation to which of the documents should be regarded as the true copy of the report of the commissioners, induced the congress to pass a joint resolution for the relief of the citizens of Jasper county, in the following terms, viz.:

"Whereas, the citizens of Jasper county have been prevented from obtaining their patents to lands, in consequence of frauds having been committed by designing persons, in using the seal of that county, by impressing it upon an incorrect abstract of certificates purporting to be the same as recommended by the commissioners, appointed to 'detect fraudulent land certificates,' as genuine and legal claims against the government, and being detected in the general land office; and whereas, a

true copy of the original abstract having been deposited in the same, that only requires the formality and sanction of law; therefore, " SEC. 1. *Be it resolved by the Senate and House of Representatives of the Republic of Texas in Congress assembled,* That the copy of the original abstract of land certificates, now in the general land office, and certified to by the chief justice and sheriff of Jasper county to be a true copy of the original abstract of land certificates recommended as genuine and legal claims against the government, by the commissioners appointed to detect fraudulent land certificates, be, and the same is hereby ratified and validated the same as the original could be; and the commissioner of the general land office is hereby required to issue patents upon the said claims, so certified and returned, in the same manner as though the return had been made by the proper commissioners," etc. [Laws of 1842, p. 10.]

It appears from the record, that the plaintiff could have produced in evidence, a certificate from A. G. Parker, the clerk of the county court of Jasper county, that the certificate of Henry P. Rock, for a headright, had been recommended by the investigating board of commissioners for a patent.

The single question in the case is, whether the plaintiff has produced, or offered to introduce, such legal evidence of the genuineness of his claim, as would authorize the award of a mandamus against the public officer.

It is an undoubted principle of law, that this writ will not issue against a public officer, unless to compel the performance of an act clearly defined and enjoined by the law; and which is, therefore, ministerial in its nature, and neither involves any discretion, nor leaves any alternative. [12 Peters, 524; 14 Peters, 514; 3 Howard, 100.] In this controversy, for instance, where the genuineness of the claim is alone in question (all other requisites of the law having been complied with), the evidence which the law prescribes (and that alone) to establish the controverted fact must be introduced, and must furnish incontrovertible proof of the fact, in order that judicial power may be exerted, as prayed for in the application. The

ordinary instrument of evidence, by which the commissioner of the general land office tests the genuineness of certificates is, the report of the investigating commissioners, signed by themselves, and returned to the general land office. It was contended that the signatures of the commissioners to this report was unnecessary; that the attestation of the clerk was sufficient to give authenticity to the document, as a true copy of the original abstract procured among the records of the county; and that it furnished the highest evidence to guide the commissioner in determining questions upon the legality of claims.

Whatever force may be allowed to the certificate of the clerk, where there is no better evidence, yet from a comparison of various statutory provisions on the subject, we think the intention of the legislature clear, that the reports transmitted to the commissioner of the general land office should be signed by the commissioners themselves.

The first section of the act [Laws of 1840, p. 139] which instituted the investigating process, directed the officers, appointed under the act, to report to the commissioner of the general land office such certificates as they found to be genuine and legal. In the third, they are directed to visit the several counties, and make report to the commissioner of the general land office. In the fourth and fifth, patents are directed to issue on certificates returned as genuine and legal by the commissioners, and prohibited from issuing on those not so approved and reported. In the 12th section of the law, the clerk is directed to make out three copies of the report of the commissioners. The one which is retained in the county as a record is treated as the original abstract of recommended certificates, and the other two are described as copies, one of which is to be transmitted to the general land office. The mode of authenticating these copies is not positively prescribed. The original is to be signed by the commissioners, and attested by the clerk; and, as all the other provisions of the statute, which refer to the copy to be forwarded to the land office as a report made and returned by the commis-

sioners, it cannot be doubted that the two reports, described as copies, should be validated by the signature of the commissioners. If the attestation of the clerk was intended to have been a sufficient authentication of their report, the duty of transmitting it to the general land office would, doubtless, have been imposed on that officer; but this charge is treated, throughout the statute, as a trust reposed in the commissioners alone.

Subsequent acts of congress characterize the return of approved certificates, as being made by the officers appointed for the investigation. [Acts of 1840, p. 162; 1841, p. 64.] But in my view, the fact whether any of the copies of the report from Jasper county was signed by the commissioners, or attested only by the clerk, is immaterial to the issue in the case before the court. The joint resolution of congress has determined the instrument which shall be taken as a true copy of the original abstract of approved certificates remaining of record in the county, and by its terms, and inferentially, has excluded all others; and, unless this resolution be clearly unconstitutional, it must be regarded as the standard by which the rights of the plaintiff are to be tested and the action of the commissioner and courts of justice controlled.

The legislature had evidence satisfactory to themselves that an incorrect and fraudulent copy of the report had been deposited in the land office, and they so determined; and, also, that another copy, being truly taken from the original, should be validated, confirmed and be as effectual as if the same had been made by the proper commissioners.

But it is contended that there neither is, nor ever was, any such copy in the general land office as the one ratified and validated by the joint resolution.

That the copy is misdescribed, or, at least, is not fully described, cannot be doubted, and the act is a pregnant instance of the calamities inflicted on a community by hasty and ill-advised legislation. Had a true description of the ratified copy been given, this suit would, perhaps, have never been instituted, and no doubts would have existed as to the certifi-

cates which had been, in fact, approved and would be recognized and patented by the government. But whether the copy ratified by the legislature be one of those deposited in the land office, or whether it be really or not in existence, the terms of the resolution are such as, in effect, to inhibit the commissioner from regarding any copy then in the land office, not signed by the sheriff and chief justice, and the court from treating the copies, introduced by the plaintiff, as any evidence of the genuineness of the claims therein embraced. And were the law so obscure as to render it impossible for the commissioner to determine the particular copy referred to, yet it is sufficiently plain in its terms to leave no doubt of the rejection of the copies relied on by the plaintiff, and they can, therefore, form no ground on which to base the award of a mandamus against the commissioner. If the case were such as to require further legislation to guide the commissioner, yet that could give no force or validity to instruments of evidence which were, in effect, annulled by the resolution.

We are not to be considered as maintaining that the case required further legislation, or that the public officers have given an erroneous construction to the act of congress. But whether that were the case or otherwise, the plaintiff can derive no benefit from the evidence which he attempted to introduce, as that was stripped of all its legal force (if it ever had any for the purposes of this suit) by the resolution to which reference has been made. But we are not of opinion that the resolution has been erroneously construed by the commissioner.

We must take for granted that the legislature, from the terms of the resolution, intended to ratify a copy actually deposited in the land office, and this is the only one which the resolution could possibly have been designed to validate. This is signed by the chief justice and sheriff, and although it is signed also by others, yet neither of the other copies having the signature of both of these officers can, by possibility, be considered as ratified by the resolution.

The certificate of Henry P. Rock not being found in the

copy of the abstract sanctioned by the law, has no standing in a court of justice, and confers no right upon which the writ can be awarded.

The judgment below is affirmed.