Argued December 17, decided December 30, 1913.

# CRAWFORD *v.* SCHOOL DISTRICT No. 7.*

(137 Pac. 217.)

**Appearance—General Appearance—Demurrer to Pleading.**

1. The Circuit Court, being one of general jurisdiction, and being given jurisdiction to grant writs of *mandamus* by Section 614, L. O. L., where defendants appeared and filed demurrers to the alternative writ of *mandamus*, the court had jurisdiction of the persons of defendants and of the subject matter of the action.

[As to test whether appearance is special or general, see note in Ann. Cas. 1914A, 1189.]

**Mandamus—Persons Entitled to Sue.**

2. A father, being the natural guardian of his children and chargeable with their support and education, and being guilty of a misdemeanor, under Section 4120, L. O. L., and Laws of 1911, page 428, if he fails to send them to the public schools according to law, has the right to maintain *mandamus*, to compel a school board to permit his minor children to attend the public schools and be instructed therein.

**Parties—"Defect"—Defendants.**

3. "Defect" means too few, not too many, and there is a defect of parties defendant only when one or more parties that should have been made defendants have not been made parties.

**Parties—Defects—Sufficiency of Demurrer.**

4. When one demurs to a complaint for defect of parties, it is necessary to state in the demurrer who the omitted party is, to enable the plaintiff to amend his pleading by including all the necessary parties.

**Mandamus—Appeal—Record—Matters Considered.**

5. Under Section 616, L. O. L., requiring the material facts stated in a petition for *mandamus* to be recited in the alternative writ, and Sections 618-620, limiting the pleadings in *mandamus* to the alternative writ, answer, reply, and demurrers to these pleadings, and providing that the pleadings may be amended, and issues made up and tried, as in an action, when the alternative writ is amended, the petition and original writ cannot be considered for any purpose, on an appeal from a judgment sustaining demurrers to the amended writ.

**Mandamus—Pleading—Demurrer—Admissions.**

6. Demurrers to an amended alternative writ of *mandamus* admit all the material allegations thereof to be true.

*On the question of separate schools for colored children, see note in 14 L. R. A. 581.          REPORTER.

Schools and School Districts—Public Schools—Right to Admission—Half Indian Blood.

7.    Where children of half Indian and half white blood and their parents are citizens of the United States and of the state, are not members of any Indian tribe, and conform to the customs and habits of civilization, the children are *prima facie* entitled to be admitted as pupils in the public school of the district in which they live.

Schools and School Districts—Public Schools—Separate Schools for Colored Children.

8.    While the state may enact laws for separate schools for colored children, black or red, school boards cannot, under Section 4052, subsection 18, L. O. L., requiring them to admit free of charge to the schools of their districts all persons between the ages of 6 and 21 residing therein, and in the absence of statutory provision permitting it, establish separate schools for Indian children and compel them to attend such schools.

Schools and School Districts—Public Schools—Powers of School Boards.

9.    School boards have no powers except those expressly granted, and those necessarily implied from those that are granted.

From Klamath: Henry L. Benson, Judge.

Department 1.    Statement by Mr. Justice Ramsey.

This is an application by William Crawford for a writ of *mandamus* to compel the school board of district No. 7, of Klamath County, to permit his two children, namely Juanita and Naoma Crawford, to attend the public school held in said district, and to receive instructions as pupils therein. Demurrers to the amended alternative writ of *mandamus* issued in said proceeding were sustained, and said proceeding was dismissed by the court below.    The petitioner appeals.

Reversed.

For appellant there was a brief and an oral argument by *Mr. C. M. Oneill.*

For respondents there was a brief over the names of *Mr. Thomas Drake* and *Messrs. Kuykendall & Ferguson,* with an oral argument by *Mr. D. V. Kuykendall.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

The petitioner and his wife are of half Indian blood, and their children are half Indians also. The petitioner is a native of Yreka, California, and his wife is a native of Klamath Falls, in this state, and both the petitioner and his wife, and also their children, are citizens of the United States and of this state, and residents of Klamath County. The fathers of the petitioner and of his wife were white men and their mothers were Indian women. The petitioner and his wife and their children are, and for some time prior to the commencement of this proceeding were, residents and inhabitants of school district No. 7, of Klamath County, and the petitioner was and is a taxpayer in said school district. The petitioner and his wife and their children live separate from any Indian tribe. The petitioner and his wife have five children, and two of these children are Juanita Crawford, aged 9 years, and Naoma Crawford, aged 8 years. The petitioner and his wife and each of their children hold completed allotments of and patents for land on the Klamath Indian Reservation, but they do not live on said reservation. The petitioner, his wife, and his children, have voluntarily adopted the customs, usages and habits of civilized life. The petitioner's said two children attended the public schools of said school district for two years prior to September 27, 1912, and received instructions therein the same as other children did. The amended alternative writ of *mandamus* sets forth facts showing that the petitioner's two said children were in all respects entitled to be admitted to attend the public schools of said school district, and to receive instructions therein free of charge, under Section 4052, subdivision 18, L. O. L., unless their being of half Indian blood disqualified them to attend

the public schools and receive instructions therein. It appears from said writ that the teacher, who taught the public school in said school district No. 7, by orders of the school board of said school district, excluded said Juanita Crawford and Naoma Crawford from the public school taught in said district, and from receiving instructions therein. The defendants filed demurrers to said amended alternative writ of *mandamus*, alleging the following grounds thereof: (1) That the court has no jurisdiction of the persons of the defendants, or of the subject of this action; (2) that the plaintiff has not capacity to sue; (3) that there is a defect of parties defendant; (4) that the said writ does not state facts sufficient to entitle the petitioner to the relief demanded. Their demurrers were sustained, and said proceeding was dismissed by the court below. The petitioner assigns as error the sustaining of said demurrers and the dismissal of said proceeding.

1. The court below acquired jurisdiction of the persons of the defendants by service of process and by their appearances. They appeared and filed demurrers to the writ. This would have conferred jurisdiction of their persons, if they had not been duly served with process.

The court below is a court of general jurisdiction, and the statute expressly confers jurisdiction upon Circuit Courts to grant writs of *mandamus:* Section 614, L. O. L. The court below had jurisdiction of the persons of the defendant and of the subject matter of the proceeding.

2. A father is the natural guardian of his minor children, and is charged by law with the duty of attending to their support and education. Under our statute he is guilty of a misdemeanor if he fails to send his children to the public schools according to

law: Section 4120, L. O. L., and page 428 of Laws for 1911.

The petitioner, as father of his children, has the right to maintain this proceeding to compel the school board to permit his minor children to attend the public schools and to be instructed therein, according to law: High, Extraordinary Legal Remedies (3 ed.), § 438.

3. The third point made by the demurrers is that there is a defect of parties defendant. Defect means too few—not too many. There is a defect of parties defendant only when one or more parties that should have been made defendants have not been made parties to the suit or proceeding.

In Sutherland, Pleading, Section 273, the author says:

"This phrase means too few—not too many. When it appears upon the face of the complaint that the presence of other parties is necessary to a complete determination of the controversy, a demurrer will lie for a defect of parties, plaintiff or defendant."

4. It is also a rule of pleading that when one demurs to a complaint for a defect of parties plaintiff or defendant, it is necessary for the demurrant to state, in the demurrer, who the omitted party, plaintiff or defendant, as the case may be, is, in order to enable plaintiff to amend his pleading by including all the necessary parties.

Speaking upon this subject, Sutherland, in Section 276, Volume 1, of his work on Pleading, says:

"A demurrer under this subdivision, following the words of the code, that there is a defect of parties defendant is insufficient for not specifying the particular defect. It must show who are the proper parties from the facts stated in the bill, not indeed by name, for that might be impossible, but in such a manner as to

point out to the plaintiff the objection to his bill, and to enable him to amend by making proper parties."

Bliss, in his work on Code Pleading (3 ed.), Section 411, *inter alia*, says:

"The defect of parties for which a demurrer is allowed is a deficiency, not an excess of parties. * * * A demurrer for this cause will not lie unless it affirmatively appears by the pleading demurred to that the person who should have been made a party is living at the time the action is commenced; if it does not so appear, the objection must be taken by answer, and, in either case, the names of the omitted parties must be given."

The demurrers do not point out any person who should have been made a defendant, and hence they raise no question for determination on that point.

5. The principal point made by the demurrers is that the amended alternative writ does not state facts sufficient to entitle the petitioner to the relief demanded. It was claimed, on the argument, that school district No. 7 had established a school for Indian children and children that are part Indian, separate from the school attended by white pupils, and that the petitioner's children were excluded from the school which they desired to attend, and that they were directed to attend the school established for them and other children who were part Indian; but the amended alternative writ does not show such a state of facts. It is claimed by the defendants that the petition for the writ and the original writ set out these facts. The defendants had copies of the petition and the original writ sent up for the purpose of showing those facts. The petition for a writ of *mandamus* is presented to the court for the purpose of obtaining the issuance of a writ, and, as soon as a proper writ has been issued, the petition becomes *functus officio,* and the writ can-

not be aided by reference to the petition.    An alternative writ of *mandamus,* properly drawn, is required to state concisely the facts, as stated in the petition, showing the obligation of the defendant to perform the act desired, and his omission to perform it, etc.    In other words, the material facts stated in the petition should be recited in the alternative writ: Section 616, L. O. L.    The defendant on the return day may show cause, either by demurrer or by answer (Section 618, L. O. L.), and the demurrer or answer is to be made to the writ, in the same manner as to a complaint. The only pleadings in a *mandamus* proceeding are the alternative writ, the demurrer or the answer to the writ, and the demurrer or the reply to the answer: Sections 618–620, L. O. L.    Pleadings may be amended, and issues made up and tried, in like manner and effect, as in an action: Section 620, L. O. L. When the writ was amended, the amended writ took the place of the original, and the latter ceased to be of any force in the proceedings.    We cannot consider either the petition or the original writ for any purpose on the appeal.

In *Elliott* v. *Oliver,* 22 Or. 45, 46 (29 Pac. 2), the court says:

"The facts stated in the writ should be the same facts stated in the petition for the writ, as no resort or reference can be had to the petition in aid of the writ."

In *McLeod* v. *Scott,* 21 Or. 111, 112 (29 Pac. 1), the court says:

"The petition is no part of the pleadings. * * This being so, the writ must be sufficient in itself to show what is claimed and the facts upon which the claim is made.    It stands for the complaint and may be demurred to or answered in the same manner as a complaint in an action. * * That the writ is wanting in

material allegations to support the proceeding is not questioned; and, upon reconsideration, we do not think it can be aided by reference to the facts in the petition.''

In *Shively* v. *Pennoyer*, 27 Or. 34 (39 Pac. 397), the court says:

''The alternative writ is deemed the complaint in *mandamus* proceedings, and by it their sufficiency must be tested, and not by the petition.''

6. The demurrers to the amended writ admit all the material allegations thereof to be true.

7. The facts stated in the amended writ show *prima facie* that the petitioner's children were entitled to be admitted as pupils of said school district No. 7, and to receive instructions therein in all respects as the white children. They and their parents are citizens of the United States and of the State of Oregon, and reside in said school district. They are not members of any Indian tribe, and they conform to the customs and habits of civilization. These children are half white, and their rights are the same as they would be if they were wholly white.

8. The question, whether school districts in this state can establish separate schools for Indian children and compel them to attend such schools is not necessarily involved in this appeal, for the reason that the amended writ fails to show that school district No. 7 had provided a separate school for Indian children. However, this question was argued at the hearing, and, if the defendants should answer the writ, setting up the supposed fact that the school board had provided a separate school for Indian children and those that are partly of Indian blood, this question will then be directly involved. For this reason, and to obviate the

necessity for another appeal, we will express an opinion on this subject.

In 1849 the Supreme Court of Massachusetts, in the case of *Roberts* v. *City, of Boston,* 59 Mass. (5 Cush.) 198, held that the general school committee of Boston had power, under the Constitution and laws of the commonwealth, "to make provision for the instruction of colored children, in separate schools, established expressly for them, and to prohibit their attendance upon the other schools, without there being any express authority for doing so in the statutes of Massachusetts at that time. Our attention has not been called to any other case holding that school boards can establish separate schools for colored children and exclude them from schools intended for white children when not expressly authorized by statute to do so.

In 1868, the fourteenth amendment to the Constitution of the United States took effect. This section of the amendment is as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Commenting on said amendment, the Supreme Court of the United States in *Strauder* v. *West Virginia,* 100 U. S. 307 (25 L. Ed. 664), says *inter alia:*

"It [the fourteenth amendment] ordains that no state shall make or enforce any laws which abridge the privileges or immunities of citizens of the United States. * * It ordains that no state shall deprive any person of life, liberty, or property without due process of law, or deny to any person within its jurisdiction

the equal protection of the laws. What is this but declaring that the law in the states shall be the same for the black as for the white; that all persons, whether colored or white, shall stand equal before the laws of the state, and, in regard to the colored race, for whose protection the amendment was primarily designed, that no discrimination shall be made against them by law because of their color. The words of the amendment, it is true, are prohibitory, but they contain a necessary implication of a positive immunity, or right, most valuable to the colored race—the right to exemption from unfriendly legislation against them distinctively as colored, exemption from legal discriminations, implying inferiority in civil society, lessening the security of their enjoyment of the rights which others enjoy, and discriminations which are steps toward reducing them to a subject race.''

The states may enact laws providing for the establishment of separate schools for colored children, whether black or red, but such schools must be equal in equipment and efficiency to the schools provided for white children; but in this state we have no statute expressly providing for the establishment of separate schools for colored children.

Section 4052, subdivision 18, L. O. L., specifying the duties of school boards, says:

"They shall admit free of charge to the schools of their districts all persons between the ages of 6 and 21 residing therein, and all other persons may be admitted on such terms as the district may direct."

It is the imperative duty of all school boards of our public school system to admit to the schools within their districts all children residing therein, between the ages of 6 and 21, without discrimination as to color or race. When the state legislature has not passed an act expressly authorizing them to do so, school boards,

created for carrying on the public schools of the state, have no lawful power to provide separate schools for the education of white and colored children.

In the case of *Board of Education* v. *Tinnon,* 26 Kan. 18, the Supreme Court holds that the board of education had no power to establish separate schools for colored children, and *inter alia,* says:

"Has the legislature of Kansas given, or attempted to give, to boards of education in cities of the second class, the power to establish separate schools for the education of white and colored children, and to exclude from the schools established for white children all colored children, for no other reason than that they are colored children? *Prima facie,* the question should be answered in the negative. The tendency of the times is, and has been for several years, to abolish all distinctions on account of race, or color, or previous condition of servitude, and to make all persons absolutely equal before the law. *Therefore, unless it appears clear beyond all question that the legislature intended to authorize such distinctions to be made, we should not hold that any such authority has been given.*"

In *Clark* v. *Board of Directors,* 24 Iowa, 276, 277, the court says: .

"Our statute has expressed the sovereign will, that all the youths of the state between the ages of 5 and 21 years shall be entitled to the privileges and benefits of our common schools, and it is not competent for the board of directors to resist that sovereign will and declare that, since 'public sentiment in their district is opposed to intermingling of white and colored children in the same school,' they will deny equal privileges to some of these youths. In other words, all the youths are equal before the law, and there is no discretion vested in the board of directors, or elsewhere, to interfere with or disturb that equality. The board of directors may exercise a uniform discretion equally

operative upon all, as to the residence, or qualification, or freedom from contagious disease, or the like, of children, to entitle them to admission to each particular school; but the board cannot, in their discretion or otherwise, deny a youth admission to any particular school because of his or her nationality, religion, color, clothing, or the like.''

The court held in that case that the board could not establish a separate school and compel colored children to attend it.

In the later case of *Dove* v. *Independent School District,* 41 Iowa, 689, the court approved the last preceding case, and the syllabus of the case is as follows:

''A pupil cannot legally be excluded from the public schools on account of color or descent, nor can he be compelled, if colored, to attend a separate school for colored children.''

At one time California had a statute requiring the establishment of separate schools for children of African descent and for Indian children, and this law was sustained in *Ward* v. *Flood,* 48 Cal. 37 (17 Am. Rep. 405). Later the legislature revised its school laws and omitted the provision requiring separate schools for colored children, and the case of *Wysinger* v. *Crookshank,* 82 Cal. 588 (23 Pac. 54), arose under the latter law. The syllabus of the latter case is as follows:

''Subsequent to the act of April 7, 1880, repealing Sections 1669–1671 of the Political Code, and under the existing laws touching the education of children in the public schools, it has not been, and is not now, within the power of boards of education or school trustees to establish public schools exclusively for children of African descent, or to exclude them from the public schools established for white children.''

In the case of *People* v. *Board of Education,* 101 Ill. 308 (40 Am. Rep. 196), the facts were that the school board of Quincy had established separate schools for colored children and excluded them from the schools intended for white children, and the Supreme Court held that they could not legally do so, saying *inter alia:*

"Whether the fourteenth amendment would prohibit school directors or boards of education from excluding colored children from public schools by the adoption and enforcement of such rules as have been adopted in this case (separate schools being provided for the colored children) is a question which we do not deem it necessary to determine here. We base our decision on the Constitution and laws of the state. * * Under our law, aside from the fourteenth amendment, directors of schools and boards of education, like defendants in error, have no discretion to deny a pupil of the proper age admission to the public schools on account of nationality, color or religion. * * Whether our Constitution and the acts of the legislature passed in pursuance of it, which place all children, regardless of color, upon a perfect equality so far as admission into the public schools is concerned, are to be regarded as wise or unwise legislation is a matter with which the courts have no concern. We are bound to declare the law as we find it written, and if it is not satisfactory to any section of the state, the remedy is in the legislative department of the government and there alone."

In the case of *Knox* v. *Board of Education,* 45 Kan. 152 (25 Pac. 616, 11 L. R. A. 830), the syllabus of the case is as follows:

"Until the legislature clearly confers power upon boards of education of cities of the second class to establish separate schools for the education of white and colored children, no such power exists."

In *Board of Education* v. *State,* 45 Ohio St. 556 (16 N. E. 373), the court says:

"The power to establish and maintain separate schools for colored children was conferred on boards of education by Section 4008, and not by Section 4013 of the Revised Statutes, * * and Section 4008 having been repealed by the act of the General Assembly passed February 22, 1887, * * separate schools for colored children have been abolished, and no regulation can be made under Section 4013 that does not apply to all children irrespective of race or color."

In *People* v. *Board of Education,* 18 Mich. 409, Mr. Chief Justice COOLEY says:

"Such being the division of the state into school districts, the legislature of 1867 passed an act amendatory of the primary school law, one section of which is as follows: 'All residents of any school district shall have an equal right to attend any school therein: Provided that this act shall not prevent the grading of schools according to the intellectual progress of the pupils, to be taught in separate places, when deemed expedient. * * ' It cannot be seriously urged that with this provision in force, the school board of any district which is subject to it may make regulations which would exclude any resident of the district from any of its schools, because of race or color, or religious belief, or personal peculiarities.   It is too plain for argument that an equal right to all the schools, irrespective of all such distinctions, was meant."

9. School boards have no powers excepting those expressly granted, and those necessarily implied from those that are granted: *Baxter* v. *Davis,* 58 Or. 109 (112 Pac. 410, 113 Pac. 438); *School Directors* v. *Wright,* 43 Ill. App. 270; 35 Cyc., pp. 899, 901.   There is no statute in this state expressly granting authority to school boards to establish separate schools for black or red children, and to exclude the colored children

68 Or.—26

from the schools intended for white children; nor can this power be implied from any power that has been granted to school boards. We are satisfied that school boards have no such power in this state under existing laws.

We find that the demurrers to the amended alternative writ should have been overruled, and that the trial court erred in sustaining them.

The judgment of the court below is reversed, and this proceeding is remanded to the court below, with instructions to overrule said demurrers, and for further proceedings in accordance with the terms of this opinion.                                                        REVERSED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.