BOLIN, Justice.
U.S. Bank National Association and U.S. Bancorp (hereinafter collectively referred to as “U.S. Bank”) seek a writ of mandamus ordering the Jefferson Circuit Court *1062 to dismiss the malicious-prosecution case filed against them by Sterne, Agee & Leach, Inc. (“Sterne Agee”), that arose out of a lawsuit prosecuted by U.S. Bank entirely in the State of Washington.

Facts and Procedural History

In 2002, Sterne Agee, a Delaware corporation with headquarters in Alabama and offices in Seattle, Washington, acted as the underwriter in Washington for securities offered by a Washington business entity. Under the Washington State Securities Act, Sterne Agee was a “seller” of the securities. In 2004, in federal district court in Washington, U.S. Bank sued Sterne Agee, among others, alleging that the defendants had violated the Washington State Securities Act through a series of material omissions in the securities offering. U.S. Bank obtained default judgments or entered into settlement agreements with all the defendants except Sterne Agee. In 2006, U.S. Bank’s claims against Sterne Agee proceeded to trial. The trial court granted Sterne Agee’s motion for a judgment as a matter of law. U.S. Bank appealed, and the United States Court of Appeals for the Ninth Circuit vacated the federal district court’s order and remanded the case to the federal district court. Following a second trial in 2009, the federal district court entered a judgment in favor of Sterne Agee. U.S. Bank appealed, and the Court of Appeals for the Ninth Circuit affirmed the judgment in 2011.
On July 1, 2011, Sterne Agee sued U.S. Bank in the Jefferson Circuit Court, alleging malicious prosecution arising out of the lawsuit prosecuted by U.S. Bank in Washington. The case was removed to the United States District Court for the Northern District of Alabama, which subsequently remanded the case to Jefferson Circuit Court. On January 31, 2013, U.S. Bank filed a motion to dismiss, arguing that under Alabama’s choice-of-law rules applicable when two or more jurisdictions have an interest in the outcome of a dispute, Alabama would apply the law of the state where the injury occurred. Because this is a malicious-prosecution action, U.S. Bank argued, the injury was forcing U.S. Bank to defend an allegedly malicious securities action in Washington state and the injury thus occurred in Washington state. On April 11, 2013, the circuit court denied U.S. Bank’s motion to dismiss. On April 16, 2013, U.S. Bank moved the circuit court to certify its order for a permissive interlocutory appeal pursuant to Rule 5, Ala. RApp. P. On April 16, 2013, the circuit court denied the motion. On May 1, 2013, U.S. Bank petitioned this Court for a writ of mandamus.

Standard of Review

U.S. Bank sought to have the circuit court certify the conflict-of-laws issue for a permissive appeal pursuant to Rule 5, Ala. R.App. P. Rule 5 allows for an appeal of an interlocutory order involving a controlling issue of law as to which there is substantial ground for difference of opinion when an immediate appeal would materially advance termination of the litigation and would avoid protracted and expensive litigation. This Court has allowed permissive appeals to address conflict-of-laws situations where the trial court has certified the issue for permissive appeal under Rule 5. See, e.g., Precision Gear Co. v. Continental Motors, Inc., 135 So.3d 953 (Ala.2013); Fitts v. Minnesota Min. & Mfg. Co., 581 So.2d 819 (Ala.1991).
In the present case, the circuit court refused to certify the conflict-of-laws issue for a permissive appeal. We recognize that a certification allowing a party to seek a permissive appeal under Rule 5(a) is discretionary with the trial court. Ex parte Burch, 730 So.2d 143 (Ala.1999). In Ex parte Burch, we treated a mandamus petition addressed to a trial court’s denial *1063 of a motion in limine as a petition seeking a permissive appeal. Even though the petitioner in Burch had not asked the trial court to certify the issue for permissive appeal, the transcripts from the hearing on the motion in limine revealed the trial court’s belief that this Court’s resolution of the motion in limine was important to materially advance the litigation. We note that here the trial court stayed the taking of depositions until this Court ruled on the mandamus petition.
In Ex parte Liberty National Life Insurance Co., 825 So.2d 758 (Ala.2002), three of the eight sitting Justices agreed that mandamus would lie to direct a trial court to certify an interlocutory order for permissive review when the trial court had refused to do so upon a showing that the court had clearly exceeded its discretion, a showing not apparent on the face of the complaint in that case. Two Justices wrote separately to explain their belief that a Rule 5 certification was entirely discretionary “in the [trial] judge’s opinion,” Rule 5(a), Ala. R.App. P., and that an appellate court could not force a trial judge to hold any certain opinion. In his special writing, Justice Harwood wrote that appellate courts should resist asserting mandamus power to compel certification of an interlocutory order for permissive appeal. He noted that it would be a truly rare situation in which it would be appropriate for this Court to require certification of an issue of compelling importance, “comparable at the State level to ‘a controlling issue of national significance,’ ” and he cited Fernandez-Roque v. Smith, 671 F.2d 426, 431 (11th Cir.1982), a case that involved deportation, jurisdiction, and a foreign forum. 825 So.2d at 768-69 (Harwood, J., concurring specially). However, U.S. Bank is not seeking mandamus to compel the circuit court to certify the conflict-of-laws issue for permissive appeal. Instead, U.S. Bank seeks mandamus as its only remedy to review the conflict-of-laws issue raised in its motion to dismiss because its certification to seek permissive appeal has been denied and because this Court and the Court of Civil Appeals have granted mandamus review in cases involving conflict-of-laws issues. See Ex parte Exxon Corp., 725 So.2d 930 (Ala.1998), and Batey & Sanders, Inc. v. Dodd, 755 So.2d 581 (Ala.Civ.App.1999), respectively.
In Ex parte Exxon, supra, this Court held that a mandamus petition is an appropriate method by which to seek review of a trial court’s misapplication of conflict-of-laws analysis in a class-action certification. Although the Court in Exxon recognized the well settled principle that mandamus is a proper tool by which to challenge certification of a class action, it also recognized that, in determining whether there is a common question of law for class-certification purposes, Alabama will determine the rights of an injured party according to the law of the state where the injury occurred.
In Batey & Sanders, supra, an employee sued his employer seeking worker’s compensation benefits; he also sought damages for an alleged retaliatory discharge for seeking worker’s compensation benefits. The employer had an office in Alabama and one in Georgia, and it hired the employee to work out of its Georgia office. The trial court originally dismissed the employee’s retaliatory-discharge claim but later reinstated it. The employer petitioned this Court for a writ of mandamus, and we transferred the case to the Court of Civil Appeals. The Court of Civil Appeals held that under the rule of lex loci delicti the law of Georgia governed the employee’s tort claim of retaliatory discharge because his employment had been terminated in Georgia. The Court of Civil Appeals stated that, “[b]ecause the wrong complained of occurred in Georgia, the law of Georgia applies,” and it granted the petition and ordered the trial court to dis *1064 miss the retaliatory-discharge claim because Georgia law does not recognize a cause of action for retaliatory discharge. 755 So.2d at 583.
This Court has held that a writ of mandamus is an appropriate means by which to review the following: subject-matter jurisdiction, Ex parte Johnson, 715 So.2d 783 (Ala.1998); standing as a component of subject-matter jurisdiction, Ex parte HealthSouth Corp., 974 So.2d 288 (Ala.2007); nonjusticiability as a component of subject-matter jurisdiction, Ex parte Valloze, 142 So.3d 504 (Ala.2013); personal jurisdiction, Ex parte Duck Boo Int’l Co., 985 So.2d 900 (Ala.2007); immunity, Ex parte Butts, 775 So.2d 173 (Ala.2000); failure to exercise due diligence in identifying, before expiration of the statute of limitations, a fictitiously named defendant as the party to be sued, Ex parte Chemical Lime of Alabama, Inc., 916 So.2d 594 (Ala.2005); a denial of a motion for a change of venue when venue has been challenged as improper, Ex parte Daniels, 941 So.2d 251 (Ala.2006); a denial of a motion to dismiss where the doctrine of forum non conve-niens is applicable, Ex parte Kia Motors America, Inc., 881 So.2d 396 (Ala.2003); a refusal to enforce an outbound forum-selection clause when the issue is presented in a motion to dismiss, Ex parte Bad Toys Holdings, Inc., 958 So.2d 852 (Ala.2006); class certification, Ex parte Caremark RX, Inc., 956 So.2d 1117 (Ala.2006); a motion to dismiss an action based on abatement, Ex parte J.E. Estes Wood Co., 42 So.3d 104 (Ala.2010); the grant of a motion adding a real party in interest, Ex parte Tyson Foods, Inc., 146 So.3d 1041 (Ala.2013); the availability of a jury trial, Ex parte BancorpSouth Bank, 109 So.3d 163 (Ala.2012); a ruling on a motion to dismiss a counterclaim that was a compulsory counterclaim in a previous action, Ex parte Cincinnati Ins. Co., 806 So.2d 376 (Ala.2001); rulings on discovery motions where a privilege is disregarded, when discovery orders the production of patently irrelevant or duplicative documents such as to clearly constitute harassment or impose a burden on the producing party far out of proportion to any benefit that may be obtained by the requesting party, when the court imposes a sanction effectively precluding a decision on the merits or denies discovery going to a party’s entire action or defense so that the outcome is all but determined and the petitioner would merely be going through the motions of a trial to obtain an appeal, or when the trial court impermissibly prevents the petitioner from making a record on the discovery issue so that the appellate court cannot review the effect of the trial court’s alleged error, Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810 (Ala.2003); denial of a motion objecting to the appointment of a special master, Ex parte Alabama State Pers. Bd., 54 So.3d 886 (Ala.2010); grant of a motion to set aside previous supersedeas bond amount, Ex parte Mohabbat, 93 So.3d 79 (Ala.2012); indefinite stay of an action, Ex parte American Family Care, Inc., 91 So.3d 682 (Ala.2012); a trial court’s failure to comply with an appellate court’s instruction on remand, Ex parte Williford, 902 So.2d 658 (Ala.2004); ruling on denial of motion to admit an uncontested will to probate where a finding that the testator lacked testamentary capacity was not precluded by the appointment of a conservator, Toler v. Murray, 886 So.2d 76 (Ala.2004).
Although this list may seem to contradict the nature of mandamus as an extraordinary writ, we note that the use of mandamus review has essentially been limited to well recognized situations where there is a clear legal right in the petitioner to the order sought; an imperative duty upon the respondent to perform, accompanied by a refusal to do so; the lack of another adequate remedy; and properly *1065 invoked jurisdiction of the court. Those well recognized situations include making sure that an action is brought in the correct court (e.g., subject-matter jurisdiction and venue) and by the correct parties (e.g., personal jurisdiction and immunity), reviewing limited discovery rulings (e.g., patently irrelevant discovery), and reviewing erroneous decisions by a trial court where there is a compelling reason not to wait for an appeal (e.g., abatement). Here, the circuit court concluded that this action could be maintained when it is apparent on the face of the complaint that there is an obvious conflict-of-laws issue as to whether Alabama law or Washington state law applies. It would waste the resources of the court and the parties, and an appeal after a final judgment would be an inadequate remedy, where an action would be barred if the law of another state applied. We mention U.S. Bank’s attempt at a permissive appeal under Rule 5 only to emphasize that mandamus review is proper and not to indicate that a writ of mandamus is available in any action where a trial court has denied certification of an issue for permissive appeal. A determination of which state’s law applies is deserving of mandamus review when there is a true conflict between the laws of two states apparent on the face of the complaint and the application of one state’s law over the other would bar the action from proceeding.
It is well settled that
“[mjandamus is a drastic and extraordinary writ that will be issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 8) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court. Ex parte AmSouth Bank, N.A., 589 So.2d 715 (Ala.1991); Ex parte Day, 584 So.2d 498 (Ala.1991).”
Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993).
In the present case, we reiterate that it is apparent on the face of Sterne Agee’s complaint that there is a conflict-of-laws issue. The complaint alleges malicious prosecution based on a civil action brought by U.S. Bank in Washington state. Sterne Agee sets out in detail the course of the Washington action. Sterne Agee, in its complaint, recognizes that there is a conflict-of-laws issue and contends that Alabama law applies to the exclusion of Washington law because Alabama is the forum state, because Alabama applies the rule of lex loci delicti, and because Sterne Agee’s injury occurred in Alabama. In filing a motion to dismiss and subsequently seeking permission to appeal and then filing a petition for a writ of mandamus, U.S. Bank contends that, under the rule of lex loci delicti Washington law should apply to Sterne Agee’s malicious-prosecution claim because, it says, the injury occurred in Washington. Because U.S. Bank sought permissive appeal and was denied certification for permissive appeal by the circuit court, a petition for a writ of mandamus is U.S. Bank’s only adequate remedy for the circuit court’s denial of its motion to dismiss based on conflict of laws.
In choosing to address U.S. Bank’s mandamus petition seeking review of the circuit court’s ruling on its motion to dismiss, we are cognizant that in order for the writ of mandamus to issue, U.S. Bank must have a “clear legal right” to the order of dismissal. Although the legal issue before us has not been definitively settled, this does not mean that mandamus relief is unavailable. In other words, the mere fact that a legal issue is debatable does not change the responsibility of this Court, as a “court of law,” to decide the law and provides no basis for denying relief. We find the following persuasive:
*1066 “The general statement is made: ‘That if there be doubt as to what his legal right may be, involving the necessity of litigation to settle it, mandamus must be withheld.’ ... It is evident that this statement is too general. There are many cases where the right is disputed, and where the ultimate right depends upon questions of law which may not have been definitely settled, where the writ will issue. If the right be made clear by proof ..., and the case is one where the party is without adequate remedy[,] mandamus may issue.... Can it be said ... that the remedy will be denied simply because certain questions of law may arise that are not clearly and definitely settled?”
2 W.F. Bailey, A Treatise on the Law of Habeas Corpus and Special Remedies 801 (1918).
One federal court has explained:
“The dissent argues that mandamus lies only to compel clear, mandatory duties, so that to the extent we find the state law issue unclear, the availability of mandamus relief is called into question. This argument fails, however, for the limitation of mandamus remedies to refusals to perform clear, mandatory duties is not intended to forestall judicial review of difficult legal issues, but primarily to prohibit intrusion on, discretionary functions. ”
Georgevich v. Strauss, 772 F.2d 1078, 1093 (3d Cir.1985) (emphasis added; citation omitted).
The considerable research and reflection provided by the Oregon Supreme Court in State ex rel. Maizels v. Juba, 254 Or. 323, 460 P.2d 850 (1969), is helpful:
“The issue thus drawn is whether, where there is no dispute in the facts, mandamus will lie to decide in a certain way an especially complicated question of law, the answer to which is in extreme doubt and the solution of which requires the use of legal judgment and acumen. The Oregon statute on mandamus[,] ORS 34.110, is as follows:
“ ‘A writ of mandamus may be issued to any inferior court, ... to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, ... but though the writ may require such court, ... to exercise its ... judgment, or proceed to the discharge of any of its ... functions, it shall not control judicial discretion. The writ shall not be issued ... where there is a plain, speedy and adequate remedy in the ordinary course of the law.’
“The statements of this court in its decisions concerning the use of mandamus have been fairly uniform. Generally, the court has said that when the facts are not in dispute and there is a clear rule of law requiring the matter to be decided in a certain way, mandamus will lie. It has also said that mandamus will not lie to control the exercise of discretion or judgment. While, at times, as previously demonstrated, the court has refused the use of mandamus because of difficult legal problems being involved, more frequently it has used the writ to decide problems where the law was far from clear and where the exercise of legal judgment was required for a solution. As an illustration, this court has often used the writ to decide difficult questions of law involving the adequacy of substituted service of summons. State ex rel. Carroll v. Redding, 245 Or. 81, 418 P.2d 846 (1966); State ex rel. Pardee v. Latourette, 168 Or. 584, 125 P.2d 750 (1942); State ex rel. Hupp, etc., Corp. v. Kanzler, 129 Or. 85, 276 P. 273 (1929); State ex rel. Sullivan v. Tazwell, 123 Or. 326, 262 P. 220 (1927). The cases in which the court has so used mandamus are not limited to those testing the adequacy of substituted service *1067 of summons. See the following cases where difficult questions of law have been decided in the interpretations of statutes and the constitution: State ex rel. Public Welfare Commission v. Malheur County Court, 185 Or. 392, 203 P.2d 305, 307 (1949); State ex rel. Pierce v. Slusher, 119 Or. 141, 248 P. 358 (1926); City of Astoria v. Cornelius et al., 119 Or. 264, 240 P. 233 (1925); Peterson v. Lewis, 78 Or. 641, 154 P. 101 (1915); Crawford v. School District No. 7, 68 Or. 388,137 P. 217, 50 L.R.A., N.S., 147 (1913); State v. Ware, 13 Or. 380, 10 P. 885 (1886).
“It is plain, regardless of what this court has said to the contrary, that mandamus has repeatedly been used to require public officers, including inferi- or courts, to act in a certain way where the applicable law governing their actions was legitimately in dispute. There is ample authority elsewhere that justifies this use of the writ. F. Ferris, Extraordinary Legal Remedies § 210 (1926), has the following statement:
‘“Notwithstanding that courts will not grant mandamus to control discretion, the rule does not apply to preliminary questions of law. It applies only to the act to be commanded by the writ* The character of a purely preliminary question, though judicial, does not test the right to mandamus because the decision of such a question is a mere incident leading up to the main junction or act.’ (* footnotes omitted).
“In Poucher v. Teachers’ Retirement Board, 130 Misc. 896, 225 N.Y.S. 176, 178-179 (1927), the court used the following language:
“ ‘The sole question, then, is one of law,....’
“‘... (R)espondent contends that mandamus will only lie where there is a clear legal right, and as an important question of law is involved, which admits of a reasonable doubt or controversy, the petitioner should be relegated to an action at law against the retirement board. There is no reason why difficult questionfs] of law cannot be determined upon this application, as well as in an action at law. The clear legal right referred to in the cases such as Matter of Whitman, No. 1, 225 N.Y. 1, 121 N.E. 479 [ (1918) ], means a right which is inferable as a matter of law from uncontroverted facts, regardless of the difficulty of the legal question to be decided.... ’
“For similar language, also see Stewart v. Wilson Printing Co., 210 Ala. 624, 627-628, 99 So. 92, 96 (1924); Robinson v. Enking, 58 Idaho 24, 31-32, 69 P.2d 603, 606 (1937); Eberhardt Construction Co. v. Board of Com’rs of Sedgwick County, 100 Kan. 394, 396, 164 P. 281, 282-283 (1917); Cahill v. Mayor and City Council of Baltimore, 173 Md. 450, 455, 196 A. 305, 307 (1937); Perkins v. Burks, 336 Mo. 248, 254, 78 S.W.2d 845, 848 (1934); Fooshee v. Martin, 184 Okl. 554, 557, 88 P.2d 900, 903 (1939); State v. Town Council South Kingstown, 18 R.I. 258, 266, 27 A. 599, 602, 22 L.R.A. 65 (1893). Finally, the following language is found in 55 C.J.S. Mandamus § 53 (1948):
“ ‘A “clear legal right, ” within the meaning of the rule under consideration, means a right clearly founded in, or granted by, law;* a right which is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided_’ (* footnote omitted).
“It appears that much of the difficulty in the case law revolves around the use of the terms ‘discretion’ and ‘judgment’; i.e., in the case of a judicial officer, ‘judicial discretion’ as differentiated from ‘judicial judgment’ or ‘acting judicially.’ They have been confused and *1068 used interchangeably. ‘Discretion’ refers to the power or privilege to act unhampered by a legal rule. It describes a situation where a choice can be made among several courses of action, any one of which is legally permissible and not subject to review. In such a situation mandamus or any other method of review is inappropriate. The present case does not pose such a situation. Petitioner either is entitled to have the warrant quashed and his property returned or he is not. There is only one legally permissible answer. The exercise of ‘judgment’ means the formation of an opinion concerning something by exercising one’s mind upon it. Some courts, including this court, have, at times, used the terms interchangeably and, therefore, have erroneously said that mandamus will not lie to decide difficult questions of law because the exercise of judgment, judicial or official, was necessary for their solution. State ex rel. Ricco v. Biggs, 198 Or. 413, 422, 255 P.2d 1055, 38 A.L.R.2d 720 (1953); State ex rel. Coast Holding Co. v. Ekwall, 144 Or. 672, 681, 26 P.2d 52 (1933); and State ex rel. Harvey Malheur County Court, 54 Or. 2[2]5, 2[2]8, 101 P. 907, 103 P. 446 (1909).
“It is also apparent that in a mandamus context, ‘clear rule of law5 and ‘clear legal right’ have been used erroneously at times to describe a situation where there can be no dispute as to the proper legal theory rather than a situation where a right is inferable as a matter of law from uncontroverted facts. See Poucher v. Teachers’ Retirement Board, supra, and 55 C.J.S. Mandamus § 53 (1948). We are now satisfied that in an otherwise proper case, mandamus may be used to decide disputed and difficult questions of law.”
254 Or. at 327-31, 460 P.2d at 852-53.
This Court has stated:
“There remains for consideration but one question. It is, abstractly the most important in the case. It is also the most difficult. It is whether the secretary of state was under a duty to erase and expunge the alleged unauthorized entries from the house journal. That he was under such duty must be made to clearly appear before the writ of mandamus will lie against him in respect of it. If the duty exists, it is purely statutory. The secretary of state has no duties to perform except those imposed upon him by the constitution and statutes of the state. Mandamus is a conservative, not a creative, remedy. It enforces existing duties, but does not impose new duties. By it the officer may be coerced to an act which it was his duty to perform without it, but to no act as to which he was under no duty before its issuance. And the duty must be clear upon the statute. The rule as to the duty and the right to its performance is variously, and not always accurately, expressed in the adjudged cases. The right must be ‘certain and positive.’ Beaman v. Board, 42 Miss. 237 [ (1868) ]. The duty must be ‘clear, and if there be doubt, involving the necessity for litigation,’ the writ will not lie. Townes v. Nichols, 73 Me. 515 [ (1882) ]. There must be ‘a specific legal right and a positive duty.’ State v. Burnside, 33 S.C. 276, 11 S.E. 787 [ (1890) ]. ‘Duty must be specifically enjoined by law.’ Freon v. Carriage Co., 42 Ohio St. 30 [ (1884) ]. Right ‘must be clearly established. If right doubtful, writ will be refused.’ Mobile & O.R. Co. v. People, 132 Ill. 559, 24 N.E. 643 [ (1890) ]. ‘Writ will not issue, where there is a substantial doubt of respondent’s duty.’ State v. Buhler, 90 Mo. 560, 3 S.W. 68 [ (1887) ]. Will not be awarded when there is a doubt of the relator’s right to the relief sought.’ People v. Salomon, 46 Ill. 415 [ (1868) ] *1069 ‘Duty must be clearly enjoined by law.’ Draper v. Noteware, 7 Cal. 276 [ (1857) ]. ‘It must be clearly commanded by law.’ Puckett v. White, 22 Tex. 559 [ (1858) ]. ‘When the legal right is doubtful, writ will be denied.’ State v. Appleby, 25 S.C. 100 [ (1886) ]. Issued when there is a failure to perform ‘plain official duty’ (Maddox v. Neal, 45 Ark. 121 [ (1885) ]), not ‘when well founded doubt as to the alleged duty arises’ (People v. Johnson, 100 Ill. 537 [ (1881) ]; People v. Hatch, 38 Ill. 9 [ (1839) ]). ‘Where the validity of a judgment of conviction is doubtful, writ will not issue to enforce it.’ Rex v. Broderip, 5 Barn. & C. 239; Reg. v. Ray, 44 U.C.Q.B. 17. The act sought to be compelled, must be ‘clearly defined and enjoined by law.’ Glasscock v. Commissioner, 3 Tex. 51 [ (1848) ]. ‘The writ does not lie to compel a county judge to perform an act which the law does not specifically enjoin upon him as a duty resulting from his office.’ State v. Napier, 7 Iowa 425 [ (1858) ]. The duty must be either imposed upon the officer ‘by some express enactment, or necessarily result from the office he holds.’ Pond v. Parrot, 42 Conn. 13 [ (1875) ]. Officer must be ‘expressly authorized by law" to do the act. Chisholm v. McGehee, 41 Ala. 192 [ (1867) ]. ‘A clear specific legal right ’ to have the act performed must be shown. 3 Brick. Dig. p. 625.
“As we have said, some of the foregoing expressions are inaccurate or misleading. A doubt that may arise in the mind of the court in matter of law, as to the existence of the duty, will not, as some of the cases seem to hold, require or justify the denial of the unit. It is the court’s province and duty to solve all such doubts, and declare the duty as it finds it to be, after its misgivings as to the intent and meaning of the statute involved, or as to any other question of law, have been eliminated. Substantial doubt as to whether the facts of the particular case present the conditions upon which the officer is bound to act may, it would seem, justify or require a refusal of the writ. Of course, the doubts of the officer as to his duty are of no consequence. State v. Tarpen (Ohio) [43 Ohio St. 311,] 1 N.E. 209 [ (1885) ]. Again, the duty need not be ‘specifically enjoined’ or ‘expressly prescribed’ by law. The true rule in this connection, we apprehend, is that the duty must be imposed in terms by the statute, in cases like the one in hand, or must result therefrom by fair and reasonable construction or interpretation. It must appear from the statute in terms or by fair implication.”
State ex rel. Brickman v. Wilson, 123 Ala. 259, 280-82, 26 So. 482, 487-88 (1899) (some emphasis added).
In light of the foregoing, we now turn to the legal issue before, us.

Discussion

The principle that governs which state’s substantive law applies to tort claims in a conflict-of-laws analysis is well settled: “Lex loci delicti has been the rule in Alabama for almost 100 years. Under this principle, an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred.” Fitts v. Minnesota Min. & Mfg. Co., 581 So.2d at 820. Accordingly, our review of the denial of the motion to dismiss this malicious-prosecution action is based upon the principle of lex loci delicti.
The parties agree that under the principle of lex loci delicti the governing law is the law of the jurisdiction where the injury occurred. The parties disagree, however, as to where an injury occurs for purposes of a malicious-prosecution claim. U.S. Bank argues that the injury in a malicious-prosecution action occurs in the *1070 state where the defense of the allegedly malicious prosecution occurred. It reasons that because “injury” is the last element of a cause of action for any tort, including malicious prosecution, the injury resulting from malicious prosecution occurs where the last event necessary to make the actor liable for the alleged tort takes place. In this case, it argues, the last event necessary occurred in Washington when the securities action was terminated in favor of Sterne Agee. Sterne Agee argues that because the injury suffered in a malicious-prosecution action is financial, the injury occurs where the financial harm was felt. In this case, it argues, the financial harm was felt, and thus the injury occurred, at its corporate headquarters in Alabama.
Unlike Alabama, Washington follows the “English rule” for malicious-prosecution claims, which requires a plaintiff to plead arrest or seizure of property. See Clark v. Baines, 150 Wash.2d 905, 84 P.3d 245 (2004). Because no arrest or seizure has occurred in this situation, U.S. Bank argues that, under Washington law, Sterne Agee cannot state a malicious-prosecution claim.
For the reasons below, we find that injury in a malicious-prosecution action occurs in the state where the allegedly malicious lawsuit was terminated in favor of the complaining party. Therefore, the principle of lex loci delicti requires that the law of the state in which the antecedent lawsuit was litigated governs a claim of malicious prosecution.
Alabama continues to follow the traditional view of the Restatement (First) of Conflicts of Law, as discussed in Fitts v. Minnesota Min. & Mfg. Co., supra, which looks to the lex loci delicti in tort claims, “in the state where the last event necessary to make an actor liable for an alleged tort takes place.” Restatement (First) of Conflict of Laws § 377 (1934). This interpretation adheres to the holding of the seminal lex loci delicti case in Alabama, Alabama Great S. R.R. v. Carroll, 97 Ala. 126, 11 So. 803 (1892). In Carroll, the plaintiff resided in Alabama and was employed by an Alabama corporation as a brakeman on the corporation’s railroad. The plaintiff was injured when a link between two freight cars broke in Mississippi. However, two employees in Alabama had failed to inspect the link before the train left for Mississippi. Although Alabama law recognized a cause of action for injuries caused by the negligence of fellow employees, Mississippi law did not. Following the traditional rule, the Alabama Supreme Court applied the law of the place of the injury (Mississippi), despite the facts that the acts giving rise to the plaintiff’s injuries occurred in Alabama and that the plaintiff was employed in Alabama. The Court stated that negligence without injury will not support recovery.
“Up to the time [this] train passed out of Alabama no injury had resulted. For all that occurred in Alabama, therefore, no cause of action whatever arose. The fact which created the right to sue, the injury without which confessedly no action would lie anywhere, transpired in the State of Mississippi. It was in that State, therefore, necessarily that the cause of action, if any, arose; and whether a cause of action arose and existed at all or not must in all reason be determined by the law which obtained at the time and place when and where the fact which is relied upon to justify a recovery transpired.”
Carroll, 97 Ala. at 134, 11 So. at 806. Therefore, the place of injury is in the state where the “fact which created the right to sue” occurs.
In the present case, the “fact which created the right to sue” was the termination of the allegedly malicious lawsuit in *1071 favor of Sterne Agee, which occurred in Washington. Thus, the principle of lex loci delicti requires that Washington law govern Sterne Agee’s malicious-prosecution claim.
We note that in support of its “feel the financial harm” argument for malicious-prosecution claims, Sterne Agee cites several decisions from federal district courts, sitting in Alabama, holding that where the alleged injury is financial, the location where the financial injury was felt is determinative. Glass v. Southern Wrecker Sales, 990 F.Supp. 1344 (M.D.Ala.1998), appears to be the first time a federal court sitting in Alabama applied the “place where the financial injury was felt” analysis. In Glass, the purchaser of a tow truck, who was a resident of Alabama, sued a Georgia truck dealer alleging fraud after the frame of the tow truck purchased in Georgia broke while it was being driven in Alabama. The truck dealer argued that because the alleged misrepresentations occurred in Georgia, then Georgia law should apply. The federal court, sitting in diversity, applied the choice-of-law rules of Alabama, and, because Alabama applies the rule of lex loci delicti, “it is not the site of the alleged tortious act that is relevant, but the site of the injury, or the site of the event that created the right to sue.” 990 F.Supp. at 1347. The court stated:
“In examining other courts’ application of the lex loci delicti rule to fraud claims, the court has found that courts consistently conclude that the state where the injury occurred in a fraud claim is the state in which the plaintiff suffered the economic impact. See Management Science America, Inc. v. NCR Corp., 765 F.Supp. 738, 740 (N.D.Ga.l991)(examining cases from Indiana and Tennessee in determining that ‘[fjederal courts ... consistently have considered [fraud] to have been committed in the state where the economic loss occurred and not where the fraudulent misrepresentations were made.’); Steele v. Ellis, 961 F.Supp. 1458 (D.Kan.1997); Restatement of Conflict of Laws § 377 (1934). Therefore, the court will look to see in which state any alleged economic impact was felt.”
990 F.Supp. at 1348. The Glass court’s holding was limited to fraud claims, and that court recognized that it was not relying on Alabama caselaw in concluding that courts applying the principle of lex loci delicti in fraud claims look to the state in which the plaintiff suffered the economic impact. The other decisions cited by Sterne Agee in which federal courts sitting in Alabama applied the financial-harm analysis did not concern malicious prosecution and, likewise, did not rely on Alabama caselaw. See, e.g., Alabama Aircraft Indus., Inc. v. Boeing Co., Inc. (No. 2:11-CV-3577-RDP, March 20, 2013) (N.DAla. 2013) (not reported in F.Supp.2d) (fraud claim); Chambers v. Cooney (No. 07-0373-WS-B, Aug. 29, 2007) (S.D.Ala.2007) (not reported in F.Supp.2d) (tortious interference); APR, LLC v American Aircraft Sales, Inc., 985 F.Supp.2d 1298 (M.D.Ala.2013) (fraud and negligence); Reibling v. Thermo Credit, L.L.C. (In re Trinsic, Inc.) (Bankr.No. 07-10324, May 19, 2008)(Bankr.S.D.Ala.2008) (not reported in B.R.)(fraud and tortious interference); Re-nasant Bank v. Park Nat’l Corp. (No. 12-0689-WS-C, April 10, 2013) (S.D.Ala.2013) (not reported in F.Supp.2d)(fraud and tor-tious interference). These cases are distinguishable from the present case.
For a malicious-prosecution claim, the event creating the right to sue is not the expenditure of financial resources in order to defend a lawsuit. Such expenses would be made even if the antecedent lawsuit was ultimately terminated in favor of the defendant. It is the determination that such expenses were required to defend an allegedly malicious prosecution (by *1072 termination in favor of the complaining party) that creates the right to sue. See Barrett Mobile Home Transp., Inc. v. McGugin, 530 So.2d 730, 733 (Ala.1988) (identifying “termination favorable to the plaintiff’ as the last element required for a cause of action for malicious prosecution to accrue).
Alabama courts’ application of the principle of lex loci delicti to cases involving the tort of bad-faith failure to defend a lawsuit are more on point with the present case. Like malicious prosecution, bad-faith failure to defend is based on injury resulting from an antecedent lawsuit, and the injury often involves more than mere financial harm. In Lifestar Response of Alabama, Inc. v. Admiral Insurance Co., 17 So.3d 200 (Ala.2009), this Court applied Alabama law to a claim of bad-faith failure to defend a lawsuit filed in Alabama. In that case, Lifestar, an Alabama corporation with headquarters in New York, sued its insurer alleging negligence and bad faith based on the insurer’s failure to defend Lifestar in a lawsuit filed in Alabama that resulted in a $5 million default judgment against it. Although Lifestar undoubtedly “felt the financial harm” of the alleged failure to defend in New York, where its headquarters were located and the state from which it paid the judgment, this Court applied the principle of lex loci delicti and held that Alabama law applied because the alleged injury occurred in Alabama.
Similarly, in Twin City Fire Insurance Co. v. Colonial Life & Accident Insurance Co., 124 F.Supp.2d 1243 (M.D.Ala.2000), Colonial Life, a corporation headquartered in South Carolina, sued its insurer for bad-faith failure to defend a lawsuit filed in an Alabama state court by one of its employees, which resulted in Colonial Life’s having to pay a costly settlement. Although Colonial Life surely “felt the financial harm” at its headquarters in South Carolina, the District Court for the Middle District of Alabama held that under the principle of lex loci delicti Alabama law governed: “Colonial allegedly suffered injury because Defendants failed to defend Colonial against [the employee’s] claim in Alabama. Therefore, the court finds that Colonial suffered injury in Alabama. As a result, Alabama law governs Colonial’s tort claims.” 124 F.Supp.2d at 1248.
In short, Sterne Agee’s reliance on cases involving fraud and tortious interference in support of its argument is misplaced, and we decline to apply the “feel the financial harm” analysis to a malicious-prosecution claim. Like Lifestar and Twin City Fire Insurance Co., Sterne Agee’s malicious-prosecution claim is based on injury allegedly resulting from an antecedent lawsuit. Accordingly, the principle of lex loci delicti likewise requires that the governing law come from Washington, the state of the antecedent lawsuit.

Conclusion

The principle of lex loci delicti requires that the law of the state in which the antecedent lawsuit was terminated in favor of the complaining party governs a malicious-prosecution claim. Thus, Washington law governs Sterne Agee’s claim of malicious prosecution. Accordingly, U.S. Bank’s petition for writ for mandamus is granted, and the circuit court is ordered to dismiss Sterne Agee’s malicious-prosecution case.
PETITION GRANTED; WRIT ISSUED.
STUART, PARKER, MAIN, and WISE, JJ., concur.
SHAW and BRYAN, JJ., concur specially.
MOORE, C.J., and MURDOCK, J., dissent.