Rel: March 7, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

————————————————

### SC-2024-0284

————————————————

**Ex parte John Cassimus et al.**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Jason T. Carrick and Ryan McAllister**

**v.**

**John Cassimus et al.)**

**(Shelby Circuit Court: CV-22-900278)**

_____

**SC-2024-0318**

_____

**Ex parte John Cassimus et al.**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Jason T. Carrick and Ryan McAllister**

**v.**

**John Cassimus et al.)**

**(Shelby Circuit Court: CV-22-900278)**

_____

**SC-2024-0349**

_____

**Ex parte Jason T. Carrick and Ryan McAllister**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Jason T. Carrick and Ryan McAllister**

**v.**

**John Cassimus et al.)**

**(Shelby Circuit Court: CV-22-900278)**

SC-2024-0284; SC-2024-0318; SC-2024-0349

MITCHELL, Justice.

John Cassimus, Jason T. Carrick, and Ryan McAllister are members of several limited-liability companies that once operated retail-liquidation stores, including a Mike's Merchandise store in Pelham and the Crazy Cazboy's chain in Alabama and other states. All of those stores have now closed. Carrick and McAllister say that the stores closed because Cassimus and his associates improperly used corporate assets and opportunities to benefit themselves and entities they controlled. Cassimus denies this allegation and says that Carrick and McAllister improperly used the stores to enrich Xcess Limited, a wholesale company that Carrick and McAllister separately operated.

Carrick and McAllister eventually brought the dispute to the Shelby Circuit Court, suing Cassimus and other individuals and entities allegedly aligned with him ("the Cassimus defendants"). The parties have since petitioned this Court to conduct mandamus review of three orders entered by the trial court. In case no. SC-2024-0284, the Cassimus defendants challenge an order denying a motion to dismiss derivative claims that Carrick and McAllister asserted on behalf of the limited-liability companies that operated the now-shuttered businesses. In case

3

no. SC-2024-0318, the Cassimus defendants seek review of an order appointing a special master to preside over discovery matters. And in case no. SC-2024-0318, Carrick and McAllister challenge an order dismissing claims against one of the Cassimus defendants, East Hampton Advisors, LLC, on the basis of § 6-5-440, Ala. Code 1975 ("the abatement statute"). We now deny the petitions filed in case nos. SC-2024-0284 and SC-2024-0349 and dismiss the petition filed in case no. SC-2024-0318.

Facts and Procedural History

Beginning in 2019, Cassimus and Carrick formed a number of limited-liability companies to operate retail-liquidation businesses.[1] One of the companies -- Last Word Liquidators, LLC -- operated a Mike's Merchandise franchise. The other companies -- Crazy Cazboy's Holding Company LLC; Crazy Cazboy's Partnerships, LLC; Crazy Cazboy's Birmingham, LLC; Crazy Cazboy's Guntersville, LLC; Crazy Cazboy's Pensacola, LLC; Crazy Cazboy's Auburn, LLC; Crazy Cazboy's Arlington, LLC; and Crazy Cazboy's Columbia, LLC -- operated the Crazy Cazboy's

---

[1]Some of these companies included other members as well.

chain and individual Crazy Cazboy's stores in Alabama, Florida, Texas, and South Carolina (these companies are referred to collectively as "the Cazboy's companies"). Cassimus and Carrick later brought in McAllister as a member of Crazy Cazboy's Holding Company, which held an ownership stake in many of the other Cazboy's companies.

Apart from those companies, Cassimus, Carrick, and McAllister also own and operate other companies in the retail-liquidation industry. Specifically, Cassimus owns NLB, LLC ("Bidding Kings"), which sells liquidated products online, and Carrick owns Xcess Limited, which purchases merchandise on a wholesale basis and then resells that merchandise to retail-liquidation businesses for final sale to consumers. McAllister is employed by Xcess Limited.

Last Word Liquidators and the Cazboy's companies had some initial success, but by 2021 they were experiencing financial difficulties. Cassimus's relationship with Carrick and McAllister deteriorated as the companies' financial difficulties increased. In May 2022, Carrick and McAllister filed their initial complaint in this action. Their most recent amended complaint asserts 29 counts against various combinations of the Cassimus defendants, who include (1) Cassimus; (2) individuals allegedly

aligned with Cassimus who were either employed by or who owned or controlled an interest in at least one of the Cazboy's companies (J.R. Frey, Brandon Harris, Michael R. Jones, Mamie Jones, Marcus Cassimus ("Marcus"), and John S. Fischer, as trustee of the Cassimus Family Trust); (3) the Cazboy's companies; (4) Last Word Liquidators; (5) other companies allegedly controlled by Cassimus or one of the other defendants (Bidding Kings; Sawtooth Plantation, LLC; Cassimus Aviation, LLC; Mpire Concepts Group, LLC; and East Hampton Advisors); and (6) ServisFirst Bank. Carrick and McAllister state that 21 of the 29 counts are being brought by them both individually and derivatively on behalf of the Cazboy's companies and Last Word Liquidators.[2]

The specific claims asserted by Carrick and McAllister can be divided into two groups. First, Carrick and McAllister allege that Cassimus, Frey, and Marcus collectively directed and oversaw the operations and finances of the Cazboy's companies and Last Word

---

[2]The materials before us indicate that McAllister does not have an ownership interest in Last Word Liquidators. Thus, any derivative claims being brought on behalf of Last Word Liquidators are necessarily being asserted by Carrick alone.

Liquidators and that Cassimus -- aided and abetted by Frey and through the failed oversight of Marcus -- fraudulently and wrongfully used the assets of those companies for his own benefit or the benefit of his friends, family, and other companies. Carrick and McAllister further state that Cassimus drained the Cazboy's companies and Last Word Liquidators of capital until the companies were effectively insolvent. Then, as those companies teetered on the brink, Carrick and McAllister say, Cassimus began moving the companies' remaining assets to his competing Bidding Kings business. Carrick and McAllister state that the Cazboy's companies and Last Word Liquidators shut down in October 2023 after Cassimus had arranged a fire sale in which Bidding Kings acquired most of their remaining assets at a price well below market value. Carrick and McAllister assert a number of claims against the Cassimus defendants based on these allegations, including breach-of-contract, breach-of-fiduciary-duty, fraud, unjust-enrichment, conspiracy, and conversion claims.

The second group of claims asserted by Carrick and McAllister involve Cassimus's alleged attempts to hide his supposed wrongdoing. Specifically, they state that, once the Cazboy's companies and Last Word

Liquidators began having financial problems, Cassimus embarked on a scheme to cover up those problems by obtaining additional financing from ServisFirst Bank. As part of that scheme, Carrick and McAllister say, Cassimus executed a series of loan agreements and promissory notes in which he overstated his authority to bind the Cazboy's companies and Last Word Liquidators. In conjunction with those documents, Cassimus executed a guaranty agreement making himself personally responsible for the debt. Carrick and McAllister allege that Frey forged Carrick's name on that guaranty agreement as well, making Carrick personally responsible for the debt. Carrick and McAllister state that Cassimus ultimately obtained $6.5 million in financing for the Cazboy's companies and Last Word Liquidators from ServisFirst Bank, even though the bank had documents in its possession establishing that Cassimus was not authorized to obtain those loans for the companies.

The additional financing did not improve the long-term prospects of the Cazboy's companies and Last Word Liquidators. After the companies were unable to make the required loan payments, Cassimus executed a forbearance agreement and assigned substantial tax refunds due the companies to ServisFirst Bank. Carrick and McAllister allege that both

Cassimus and ServisFirst Bank knew the assignment was unfair to the Cazboy's companies and Last Word Liquidators and that the assignments were not authorized by the companies despite Cassimus's representations to the contrary. ServisFirst Bank later sold all of its rights and interests related to the delinquent loans -- including its right to enforce the guaranty agreement against Carrick -- to East Hampton Advisors, a company set up and wholly owned by Cassimus. Carrick and McAllister assert breach-of-fiduciary-duty, fraud, conspiracy, unjust-enrichment, and declaratory-judgment claims against the Cassimus defendants based on these allegations.

The Cassimus defendants denied the allegations made against them by Carrick and McAllister, stating that there had not been any mismanagement or misappropriation and that Carrick had authorized his signature to be placed on the guaranty agreement. But, acknowledging the broken relationship between the parties, Cassimus filed a counterclaim and cross-claim asking the trial court to conduct an equitable accounting and to declare the rights of the parties. To conduct that accounting, Cassimus asked the trial court to appoint a special master in accordance with Ala. R. Civ. P. 53. Carrick and McAllister also

9

later moved the trial court to appoint a special master. In November 2022, the trial court appointed one ("the accounting special master") to review, among other things, the financial records of the Cazboy's companies, Last Word Liquidators, Xcess Limited, and Bidding Kings, as well as all correspondence and transactions between the companies.

The same day Carrick and McAllister brought this action, Carrick's company Xcess Limited brought a separate lawsuit against the Cazboy's companies, Last Word Liquidators, and Bidding Kings. In that lawsuit -- which was also brought in the Shelby Circuit Court -- Xcess Limited alleged that the Cazboy's companies owed it $3,859,568 for goods that Xcess Limited had delivered to them. Xcess Limited further alleged that Cassimus had improperly redirected some of those goods to Last Word Liquidators and Bidding Kings. The trial court consolidated the two actions.

Those two Shelby County lawsuits were not the only ones to spring from this dispute. In June 2023, East Hampton Advisors -- two weeks after purchasing ServisFirst Bank's interest in the loans made to the Cazboy's companies and Last Word Liquidators -- sued Carrick in the United States District Court for the Northern District of Alabama,

seeking to enforce the guaranty agreement on which Carrick said his signature had been forged. One week later, Carrick and McAllister filed an amended complaint in this state-court action naming, for the first time, East Hampton Advisors as a defendant. East Hampton Advisors moved the trial court to dismiss the claims against it, arguing that they arose from the same facts underlying the federal-court action and that they were therefore barred by the abatement statute. The trial court held a hearing on East Hampton Advisors' motion to dismiss, but the litigation proceeded without a decision on that motion.

In February 2024, Carrick and McAllister filed their third amended complaint, which asserted several new derivative claims on behalf of the Cazboy's companies and Last Word Liquidators. The next month, the Cassimus defendants moved the trial court to dismiss the derivative claims Carrick and McAllister had asserted, arguing, among other things, that Carrick and McAllister could not "fairly and adequately" represent the interests of the Cazboy's companies, Last Word Liquidators, or their other members while they were simultaneously asserting claims against those companies. See Rule 23.1, Ala. R. Civ. P. ("The derivative action may not be maintained if it appears that the

11

plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association."); § 10A-5A-9.03(a)(1), Ala. Code 1975 (explaining that a member of a limited-liability company may pursue a derivative action only if the member can "fairly and adequately represent[] the interests of the limited liability company").

On March 13, 2024 -- one week after the Cassimus defendants filed their motion to dismiss -- the trial court issued an order appointing a second special master ("the discovery special master") to oversee the discovery process.[3] The Cassimus defendants then moved the trial court to stay or reconsider that order, arguing, among other things, that their pending motion to dismiss had the potential to streamline the claims in the case and remove the need for a discovery special master. East Hampton Advisors also renewed its motion to dismiss the claims brought against it.

---

[3]The trial court first informed the parties of its decision to appoint the discovery special master at a hearing conducted two weeks earlier, at which the parties detailed their ongoing discovery disputes. No party raised any objections to the appointment of a discovery special master at that time.

On April 24, 2024, the trial court issued several orders resolving pending motions. Of note here, it denied both the Cassimus defendants' motion to dismiss and their motion to stay or reconsider the appointment of the discovery special master. The trial court also granted East Hampton Advisors' motion to dismiss the claims filed against it.

The parties then sought relief in this Court. First, the Cassimus defendants filed a mandamus petition challenging the denial of their motion to dismiss (docketed as case no. SC-2024-0284). They also asked this Court to stay the proceedings below while this petition was being considered. Two weeks later, on May 24, 2024, the Cassimus defendants filed another mandamus petition challenging the appointment of the discovery special master (docketed as case no. SC-2024-0318). Carrick and McAllister then filed their own mandamus petition asking us to review the trial court's order dismissing their claims against East Hampton Advisors (docketed as case no. SC-2024-0349). We granted the Cassimus defendants' request for a stay and ordered the opposing parties to file an answer addressing the arguments made in each petition.

Standard of Review

Our review of all three mandamus petitions is conducted according to the same framework. In each case, we must determine whether the petitioning parties have established (1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court. Ex parte Ocwen Fed. Bank, FSB, 872 So. 2d 810, 813 (Ala. 2003).

SC-2024-0284

In the first petition, the Cassimus defendants argue that the derivative claims brought by Carrick and McAllister must be dismissed because Carrick and McAllister cannot fairly and adequately represent the interests of the Cazboy's companies, Last Word Liquidators, or their other members. It is undisputed (1) that the trial court denied the Cassimus defendants' motion to dismiss those claims; (2) that an appeal would be an inadequate remedy if the Cassimus defendants' motion to dismiss is meritorious, see Ex parte 4tdd.com, Inc., 306 So. 3d 8, 17 (Ala. 2020); and (3) that the Cassimus defendants' mandamus petition is timely and complies with Rule 21, Ala. R. App. P. Our resolution of this

14

petition therefore hinges on whether the Cassimus defendants have established a clear legal right to dismissal of the derivative claims. As explained below, they have not.

In Ex parte Caribe Resort Condominium Ass'n Board of Directors, [Ms. SC-2023-0624, Dec. 13, 2024] \_\_\_ So. 3d \_\_\_ (Ala. 2024), this Court considered a similar petition involving a challenge to the plaintiffs' ability to fairly and adequately represent others in a derivative suit. The Caribe Resort defendants had moved the trial court to dismiss derivative claims asserted against them by the plaintiffs -- certain members of a condominium association -- arguing that the plaintiffs could not fairly and adequately represent the interests of the other members of that association. The trial court denied the defendants' motions in orders that did not include an express finding about whether the plaintiffs could be fair and adequate representatives. The defendants then petitioned for mandamus review, "insist[ing] that their adequacy challenge [was] a challenge to the [plaintiffs'] 'standing' and thus raise[d] a 'question of jurisdiction' that this Court should reach now -- at the pleading stage." Id. at \_\_\_ (citation omitted).

This Court disagreed, explaining that "[t]he question whether the [plaintiffs] will fairly and adequately represent the [condominium] association is a fact inquiry that is not a jurisdictional matter." Id. at ___. Citing Roberts v. Alabama Power Co., 404 So. 2d 629 (Ala. 1981), the Court explained that this type of fact inquiry is a matter within the trial court's discretion and that it would be premature to consider whether the trial court had exceeded its discretion when a factual determination had not yet been made. Thus, this Court determined, the defendants had not met their burden of showing that they had a clear legal right to an order dismissing the derivative claims, and we denied that part of their petition.

The relevant facts here mirror those in Caribe Resort. The Cassimus defendants moved the trial court to dismiss Carrick and McAllister's derivative claims; the trial court denied those motions without making an express finding about whether Carrick and McAllister could be fair and adequate representatives; and the Cassimus defendants then sought mandamus review. Like the defendants in Caribe Resort, they also argue that their petition presents a jurisdictional issue that should be addressed now. See, e.g., Cassimus

defendants' reply at 4 ("[T]his Court should consider the record submitted by petitioners in order to find that respondents lack the capacity to bring derivative claims here, and that accordingly such claims must be dismissed for lack of subject-matter jurisdiction.").

But in Caribe Resort we expressly held that the question whether a plaintiff asserting derivative claims will fairly and adequately represent a company and its other owners is a fact inquiry "that is not a jurisdictional matter." Id. at ___. Indeed, that inquiry is fact-intensive and involves myriad factors. See, e.g., Elgin v. Alfa Corp., 598 So. 2d 807, 818-19 (Ala. 1992) (compiling factors that courts may consider when making an adequacy determination); see also Angel Investors, LLC v. Garrity, 216 P.3d 944, 952 (Utah 2009) ("Determining whether a derivative plaintiff fairly and adequately represents the corporation is a fact-intensive inquiry.").[4] Thus, the Cassimus defendants are not

---

[4]Cases addressing whether a plaintiff complies with Rule 23.1's fair-and-adequate representation requirement are distinguishable from those involving a plaintiff's compliance with Rule 23.1's director-demand requirement. In the latter category of cases, there is no list of factors to consider, see, e.g., Elgin -- the inquiry is limited to whether the plaintiff made a director demand or otherwise explained why such a demand would have been futile. Mandamus relief may therefore be more readily available in those cases, where the facts are likely to be undisputed. See, e.g., 4tdd.com, 306 So. 3d at 20 (directing the trial court to dismiss the

17

entitled to an immediate, definitive answer of that question in a mandamus proceeding initiated during the pleading stage, at which "this Court must accept the allegations in the complaint as true." Caribe Resort, ___ So. 3d at ___. See also Austar Int'l Ltd. v. AustarPharma LLC, 425 F. Supp. 3d 336, 351 (D.N.J. 2019) ("Accepting the allegations of the complaint as true, I cannot find that [the plaintiff] appears to be an inadequate representative. It would be inappropriate to bar this action on Rule 23.1(a)[, Fed. R. Civ. P.,] grounds at this, the motion to dismiss stage."). It may be possible for a trial court to make an adequacy determination at the pleading stage, but it would be rare for us to hold that a trial court exceeded its discretion by declining to make that determination. And we decline to do so here. The Cassimus defendants' petition in case no. SC-2024-0284 is therefore denied.

SC-2024-0318

In their second mandamus petition, the Cassimus defendants argue that the trial court exceeded its discretion by appointing the discovery special master because, they say, there is nothing exceptional about this

---

plaintiff's derivative claims because she had neither made a demand on the corporation's directors nor shown that such a demand would have been futile).

case to merit that appointment, especially when one special master has already been appointed to conduct an accounting. See Rule 53(b), Ala. R. Civ. P. ("A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated ….").  They further note that this Court has previously recognized that mandamus relief is appropriate when a trial court's appointment of a special master does not comply with Rule 53. Accordingly, they urge us to issue a writ directing the trial court to vacate its order appointing the discovery special master. See Ex parte Alabama State Pers. Bd., 54 So. 3d 886, 897 (Ala. 2010) (granting mandamus relief because the trial court's appointment of a special master did not comport with Rule 53).

Carrick and McAllister argue, among other things, that the Cassimus defendants have not properly invoked the jurisdiction of this Court because their petition was not timely filed.  Carrick and McAllister therefore argue that mandamus relief is not available regardless of whether the trial court erred. See Ocwen, 872 So. 2d at 813 (explaining that mandamus relief requires "the properly invoked jurisdiction of the court"); see also Ex parte Water Works & Sewer Bd. of Anniston, 328 So.

19

3d 802, 808 (Ala. 2020) (recognizing that the petitioner "properly invoked the jurisdiction of this Court by filing a <u>timely</u> petition for a writ of mandamus from the trial court's … order" (emphasis added)). We agree.

Rule 21(a)(3), Ala. R. App. P., requires a petition for the writ of mandamus to be filed "within a reasonable time." It further provides that the "presumptively reasonable time … shall be the same as the time for taking an appeal." <u>Id.</u> Subject to exceptions not applicable here, Rule 4(a)(1), Ala. R. App. P., gives an aggrieved party 42 days to appeal a trial court's decision. Accordingly, the presumptive deadline for the Cassimus defendants to file a mandamus petition challenging the trial court's March 13, 2024, appointment of the discovery special master was April 24 -- 42 days later. But they did not file this petition until May 24. And their petition included no statement of good cause explaining why it was filed outside the presumptively reasonable time. <u>See</u> Rule 21(a)(3) ("If a petition is filed outside this presumptively reasonable time, it shall include a statement of circumstances constituting good cause for the appellate court to consider the petition, notwithstanding that it was filed beyond the presumptively reasonable time.").

The parties dispute whether the Cassimus defendants' petition meets the requirements of Rule 21(a)(3). Carrick and McAllister raised the timeliness issue in the answer to the petition, arguing that the petition was filed outside the presumptively reasonable time and without a statement of good cause explaining the delay. See Ex parte Troutman Sanders, LLP, 866 So. 2d 547, 550 (Ala. 2003) ("[B]ecause … [the petitioner] has offered no explanation for its failure to file the petition within a presumptively reasonable time, we must grant the respondents' motion to dismiss the petition."). The Cassimus defendants countered in their reply brief that the presumptively reasonable time for them to file their petition did not begin until April 24, when the trial court issued orders further discussing the discovery special master's duties and denying their motion to reconsider the March 13 order appointing the discovery special master. Thus, the Cassimus defendants say, their May 24 mandamus petition -- filed one month later -- was submitted within the presumptively reasonable time and no statement of good cause was required. This argument is unavailing.

We first note that the Cassimus defendants' petition makes no mention of the trial court's April 24 amended order addressing the

discovery special master's duties. Indeed, it is evident throughout the petition that the Cassimus defendants' grievance is with the March 13 appointment order -- not the April 24 amended order. For example, the petition defines the March 13 order as the "DSM Order" and complains that (1) "in entering its DSM Order, the [trial] court acted without any hearing and without any input from any party"; (2) "the [trial] court's DSM Order failed to make the requisite Rule 53 analysis"; (3) "the DSM Order failed to take into account the existence of and extensive activity directly relating to production of financial and related records already underway by the [accounting special master]"; and (4) "at the time the [trial] court issued said DSM Order, it had failed to take cognizance of and to schedule oral argument" on the pending motions to dismiss and requesting a stay. Petition at 1-3. Finally, the petition's conclusion expressly asks us to issue a writ instructing the trial court "to vacate its order appointing the discovery special master." Petition at 13. Nowhere in the petition is there any objection to the April 24 amended order addressing the discovery special master's duties.

As a fallback, the Cassimus defendants argue that the April 24 amended order "materially expanded" the duties granted the discovery

special master in the March 13 appointment order. Reply at 2. But a review of the two orders belies that contention. The March 13 order provided that the discovery special master was being appointed "for the purpose of managing discovery issues"; that he was to "preside over and rule on all discovery issues"; and that he was "authorized to resolve issues as to scope and necessity of discovery, protocols, and scheduling" and to rule on disputes "where the parties are unable to reach agreement." The April 24 amended order, meanwhile, did nothing more than reinforce the scope of the discovery special master's authority under the March 13 order and expressly stated that "all motions currently filed and any motions filed in the future that relate in any manner to discovery issues" were to be referred "to the [discovery] special master for review and recommendation to the court."

It is not apparent to this Court how the April 24 amended order referring all motions "that relate in any manner to discovery issues" to the discovery special master expanded his authority when he had already been given the authority to "manag[e]," "preside over," "rule on," and "resolve" all discovery issues in the March 13 appointment order. And the Cassimus defendants offer no explanation to assist us. Their

argument that the trial court's April 24 amended order triggered the time for seeking mandamus review of the discovery special master's appointment is without merit.

The Cassimus defendants next argue that the trial court's April 24 order denying their motion to reconsider the appointment of the discovery special master is actually the operative order that started the period for them to seek mandamus review of that appointment. They acknowledge that this Court has previously rejected the argument that "a 'motion to reconsider' tolls the time in which to seek mandamus review of an interlocutory order," Troutman Sanders, 866 So. 2d at 550, but they say that this case is more like Ex parte Orkin, Inc., 960 So. 2d 635 (Ala. 2006), which involved a discovery issue, than Troutman Sanders, which did not. We disagree.

In Troutman Sanders, the petitioner sought mandamus review of the trial court's orders denying the petitioner's motions to dismiss two related cases. 866 So. 2d at 548. But the petitioner did not file its mandamus petition within 42 days of the trial court's decisions; rather, it moved the trial court to reconsider the denials and only petitioned for mandamus relief after the court denied those motions. Id. In dismissing

the petition as untimely, the Troutman Sanders Court explained that a motion to reconsider a final judgment is governed by Rule 59(e), Ala. R. Civ. P., and that "[t]he proper filing of a Rule 59(e) motion 'suspend[s] the running of the time for filing a notice of appeal.' Ala. R. App. P. 4(a)(3)." 866 So. 2d at 849. But the Court also explained that a party's motion to reconsider an interlocutory order is not governed by Rule 59; "[t]herefore, the tolling effect of Rule 59 is not involved with respect to motions to 'reconsider' interlocutory orders." Id. at 550. For that reason, and because the petitioner did not include a statement of good cause for filing its petition outside the presumptively reasonable time, this Court dismissed the mandamus petition as untimely. Id.

Three years later, this Court decided Orkin. As the Cassimus defendants emphasize, Orkin involved a discovery dispute in which this Court had to decide whether the defendant had timely sought mandamus relief. 960 So. 2d 639. Relying on Troutman Sanders, the plaintiffs argued that the defendant had not because the defendant's mandamus petition was not filed until almost three months after the trial court had ordered it to produce the records it sought to withhold. Id. at 639-40. The defendant argued in response that, consistent with Ex parte Reynolds

Metals Co., 710 So. 2d 897 (Ala. 1998), it could not seek mandamus relief until it first moved for a protective order under Rule 26(c), Ala. R. Civ. P. Id. at 640. Thus, the defendant argued, because it petitioned for mandamus relief within 42 days of the trial court's order denying its motion for a protective order, its petition was timely filed. Id.

This Court agreed with the defendant, explaining that because it had filed its mandamus petition within 42 days of the date the trial court denied the motion for a protective order, the defendant's petition "was made within a 'presumptively reasonable time' within the meaning of Rule 21(a)(3), Ala. R. App. P." Id. at 640-41. But the Orkin Court also emphasized that its decision did "not overrule Troutman Sanders" and that the underlying principle from that case -- that "the filing of a 'motion to reconsider' in the trial court will not toll the presumptively reasonable time for filing a petition for the writ of mandamus under Rule 21(a)(3), Ala. R. App. P." -- "remains in effect." Id. at 641 n.6. It remains in effect here as well.

The Cassimus defendants' petition does involve a discovery issue in a very general sense because the interlocutory order being challenged involves the appointment of a special master to preside over discovery.

26

But that alone does not bring this case within the reach of <u>Orkin</u>. Fundamentally, this petition concerns Rule 53 and the procedure for appointing a special master -- whether that special master is tasked with managing discovery, conducting an accounting, or even some other duty. This petition does not seek mandamus review of a trial court's decision adjudicating a discovery dispute; thus, neither <u>Orkin</u> nor Rule 26, Ala. R. Civ. P., render the general rule of <u>Troutman Sanders</u> inapplicable. And when we apply <u>Troutman Sanders</u> here, it is clear that the trial court's April 24 order denying the Cassimus defendants' motion to reconsider did not toll the time for them to seek mandamus review of the discovery special master's appointment.

In sum, the Cassimus defendants' mandamus petition challenging the appointment of the discovery special master was not filed within the presumptively reasonable time and did not include a statement of good cause explaining that delay. The petition was therefore untimely and did not properly invoke the mandamus jurisdiction of this Court. We dismiss their petition.

27

SC-2024-0349

Finally, we turn to the petition filed by Carrick and McAllister. They urge us to issue a writ of mandamus that directs the trial court to vacate its order dismissing their claims against East Hampton Advisors on the basis of the abatement statute, "which prohibits a party from prosecuting two actions simultaneously in different courts if the claims alleged in each action arose from the same underlying operative facts." Ex parte Brooks Ins. Agency, 125 So. 3d 706, 707 (Ala. 2013). The parties essentially agree that this state-court action and the federal-court action involve the same claims, but they disagree as to which action should be considered first-filed. Carrick and McAllister argue that it is the state-court action, which was initiated before the federal-court action, while East Hampton Advisors argues that it is the federal-court action, which was the first action in which it was a party. We ultimately need not resolve that issue because Carrick and McAllister are not entitled to mandamus relief in any event.

"Mandamus is an extraordinary remedy" that will be granted only when the petitioner lacks "'another adequate remedy.'" Ocwen, 872 So. 2d at 813 (citation omitted). The petitioner bears the burden of showing

28

that it has no other adequate remedy and often does so by citing caselaw in which this Court has recognized that an issue is appropriate for mandamus review. Ex parte Gulf Health Hosps., Inc., 321 So. 3d 629, 632 (Ala. 2020). Here, Carrick and McAllister have cited Ex parte Skelton, 275 So. 3d 144, 150 (Ala. 2018), which provides that "'[m]andamus is the appropriate remedy to correct a trial court's failure to properly apply § 6-5-440.'" (Citation omitted.) They also say that an eventual appeal will not provide them relief because, if the federal court enters a final judgment first, that judgment will have res judicata effect and preclude further proceedings in state court.

East Hampton Advisors acknowledges this Court's previous statement that mandamus is the appropriate remedy to correct a trial court's failure to properly apply the abatement statute. But it also emphasizes that we have only ever granted this relief when a trial court has <u>denied</u> a motion to dismiss invoking the abatement statute. Here, the trial court <u>granted</u> -- not denied -- such a motion. Thus, East Hampton Advisors argues, our general rule that the granting of a motion to dismiss is <u>not</u> reviewable by petition for writ of mandamus should

29

apply. See Ex parte Lindsey, 298 So. 3d 1061, 1065 (Ala. 2020). We agree.

In Lindsey, this Court stated that "[t]he granting of a motion to dismiss is adequately remedied by a direct appeal or by an interlocutory appeal under Rule 54(b), Ala. R. Civ. P." Id. (emphasis added). Indeed, in Chiepalich v. Coale, 36 So. 3d 1 (Ala. 2009), a party whose claims against one defendant had been dismissed under the abatement statute successfully used Rule 54(b) to challenge that dismissal. As far as we can tell, Chiepalich is the only Alabama case in which a party has obtained any type of interlocutory relief from this Court to reverse a trial court's order in which claims were dismissed on the basis of the abatement statute. And the parties here have pointed us to no other authority. Thus, Chiepalich supports the conclusion that a party wishing to challenge a trial court's order granting a motion to dismiss some, but not all, claims under the abatement statute should attempt do so by way of a Rule 54(b) appeal before seeking mandamus relief.

Carrick and McAllister nonetheless argue that a Rule 54(b) appeal is an inadequate mechanism to review application of the abatement statute because a trial court has such wide discretion in deciding whether

to certify a matter for immediate appeal under Rule 54(b). Ex parte Shower, 812 So. 2d 277, 282 (Ala. 2001). In doing so, they note that this Court has repeatedly indicated that certifications under Rule 54(b) are disfavored. See, e.g., Schlarb v. Lee, 955 So. 2d 418, 419 (Ala. 2006). Accordingly, Carrick and McAllister argue, mandamus relief should be available when a party's claims have been dismissed based on the abatement statute.

While it is true that the trial court might have denied a request by Carrick and McAllister to certify its dismissal of their claims against East Hampton Advisors for immediate appeal under Rule 54(b), we cannot say for sure that it would have. In his special concurrence to Ex parte Uhakheme, 214 So. 3d 324 (Ala. 2016), Justice Murdock explained why that uncertainty is an insufficient reason for an aggrieved party to bypass Rule 54(b) and immediately seek mandamus relief:

> "Were this Court to begin granting mandamus review of [orders granting motions to dismiss a claim], we would effectively nullify Rule 54(b), circumventing the conditions for such review prescribed by that rule, tempting trial courts to postpone consideration of remaining claims until an interlocutory appellate ruling is obtained, and requiring the expenditure of limited appellate resources on an untold number of petitions seeking piecemeal review."

31

214 So. 3d at 324 (Murdock, J., concurring specially). Justice Murdock therefore reiterated that "appellate review of an order <u>granting</u> a motion to dismiss a claim … is not by way of a petition for a writ of mandamus but by an appeal governed by the strictures of Rule 54(b)." <u>Id.</u> Applying the general rule here compels us to deny Carrick and McAllister's mandamus petition because they had another avenue for relief -- a Rule 54(b) appeal -- that they never pursued.

Conclusion

The Cassimus defendants have not established a clear legal right to dismissal of the derivative claims asserted by Carrick and McAllister. We therefore deny the mandamus petition that they filed in case no. SC-2024-0284. And, because the mandamus petition that they filed in case no. SC-2024-0318 was filed outside the presumptively reasonable time and without a statement of good cause explaining the delay, we dismiss that petition. Lastly, we deny the mandamus petition filed by Carrick and McAllister in case no. SC-2024-0349 because they have not shown that they lacked another adequate remedy. In resolving these three petitions, we now lift the stay that we previously entered and direct the

32

trial court to resume the proceedings below once certificates of judgment are entered.

SC-2024-0284 -- PETITION DENIED.

Stewart, C.J., and Shaw, Wise, Bryan, Mendheim, Cook, and McCool, JJ., concur.

Sellers, J., concurs in the result.

SC-2024-0318 -- PETITION DISMISSED.

Stewart, C.J., and Shaw, Wise, Bryan, Mendheim, Cook, and McCool, JJ., concur.

Sellers, J., concurs in the result.

SC-2024-0349 -- PETITION DENIED.

Stewart, C.J., and Shaw, Wise, Mendheim, and McCool, JJ., concur.

Sellers, J., concurs in the result.

Bryan, J., dissents.

Cook, J., dissents, with opinion.

SC-2024-0284; SC-2024-0318; SC-2024-0349

COOK, Justice (dissenting in case no. SC-2024-0349).

The maneuvering in this case has been remarkable, and in my view regrettable. The complaint alleged, among many claims, that the signature of one of the plaintiffs had been forged on a loan guaranty for various loans. But, months after the filing of this action, one of the defendants formed a new limited-liability company and purchased those loans (including the guaranty) from a codefendant bank. Having bought the loans, the new limited-liability company then turned the tables on the plaintiffs by filing its own lawsuit about these very same loans in federal court. When the plaintiffs learned about this, they amended their existing complaint to add the new limited-liability company as a defendant in this state-court action in order to continue pursuing their existing claims about the same loans. In other words, they added the successor in interest to this action.

In response, the new limited-liability company demanded that these claims be dismissed -- that is, abated. According to the new limited-liability company, its federal-court action was the "first-filed" action (because it had not previously been a party to the state-court action -- even though its predecessor in interest, the bank, had been). The Shelby

34

Circuit Court agreed and granted the new limited-liability company's motion, thus allowing this novel strategy to succeed.[5]

The majority opinion leaves in place the dismissal of the claims against this newly-formed limited-liability company -- East Hampton Advisors, LLC ("East Hampton") -- pursuant to Alabama's abatement statute -- § 6-5-440, Ala. Code 1975. It concludes that the availability of an interlocutory appeal under Rule 54(b), Ala. R. Civ. P., constitutes an "adequate remedy" for any possible error in the granting of East Hampton's motion, thus precluding the need for mandamus relief for the plaintiffs at this point in the litigation.

I respectfully dissent. The maneuvering of the parties and the accompanying motion practice has significantly delayed this already complicated case. The majority opinion's creation of a prerequisite to our review, which would be futile under these particular facts, will simply delay this case further.

### Relevant Background

To summarize the complicated facts, the petitioners, Jason T.

---

[5]Compare Cadence Bank, N.A. v. Goodall-Brown Assos., L.P., 178 So. 3d 814, 819 n.8 (Ala. 2014) (involving the purchase of a loan in a comparable procedural posture).

Carrick and Ryan McAllister, sued their former business associate, John Cassimus, and others over alleged fraud committed in the course of their business dealings. Among many other things, they eventually alleged that someone had forged Carrick's name as the guarantor on a series of loan agreements for their business. They sought, among other things, a judgment declaring that the guaranty was unenforceable.

Specifically, on January 17, 2023, Carrick and McAllister amended their original complaint to add ServisFirst Bank as a defendant. They alleged that the bank was continuing to assert that the loan guaranty was enforceable even though it knew that Carrick had not been the one to actually sign the guaranty. They sought a judgment against ServisFirst Bank declaring that the loan guaranty was invalid and unenforceable against Carrick.

While this lawsuit was pending, Cassimus formed East Hampton. He was, and remains, the sole member of that limited-liability company. On May 31, 2023, East Hampton bought all of ServisFirst Bank's rights and interests related to the loans at issue -- including its right to enforce the loan guaranty against Carrick. ServisFirst Bank gave no prior notice of that sale to Carrick.

Two weeks after purchasing ServisFirst Bank's interest in the loans at issue, East Hampton sued Carrick in the United States District Court for the Northern District of Alabama. In its federal-court action, East Hampton sought to enforce the loan guaranty on which Carrick said his signature had been forged.

Because the sale of the loans resulted in the assignment of all of ServisFirst Bank's interests in the loans to East Hampton, Carrick and McAllister amended their complaint for a second time in the state-court action to add East Hampton as a defendant. In that second-amended complaint, they again alleged that Carrick was entitled to a judgment declaring that the loan guaranty was forged and unenforceable against him.

East Hampton moved to dismiss the claims against it, arguing that they arose from the same facts underlying the federal-court action that it had initiated against Carrick and that those claims were barred by the abatement statute. The Shelby Circuit Court granted that motion.

The Petition for a Writ of Mandamus in Case No. SC-2024-0349

Carrick and McAllister ("the petitioners") then filed a petition for a writ of mandamus in which they asked this Court to direct the Shelby

Circuit Court to vacate its order.

Although the parties essentially agree that the state-court action and the federal-court action involve the same claims, they disagree as to which action should be considered "first-filed." On the one hand, the petitioners argue that it is the state-court action in the Shelby Circuit Court that should be considered "first-filed" because it was initiated before the federal-court action. On the other hand, East Hampton argues that the federal-court action -- the first action in which it was a party -- is the action that should be considered "first-filed" despite the fact that it was brought into the state-court action and is the successor in interest to ServisFirst Bank.

The majority opinion concludes that there is no need to resolve this issue because Carrick has pursued the wrong avenue of relief. Although the majority opinion acknowledges that our Court has held that "'[m]andamus is the appropriate remedy to correct a trial court's failure to properly apply [Alabama's abatement statute,] § 6-5-440,'" Ex parte Skelton, 275 So. 3d 144, 150 (Ala. 2018) (citation omitted), it nevertheless concludes that "a party wishing to challenge a trial court's order granting a motion to dismiss some, but not all, claims under the abatement statute

38

should attempt do so by way of a Rule 54(b) appeal before seeking mandamus relief." ____ So. 3d at ____ (citing <u>Chiepalich v. Coale</u>, 36 So. 3d 1 (Ala. 2009)).

Because the Shelby Circuit Court granted East Hampton's motion to dismiss based on the abatement statute, the majority opinion holds that the petitioners should have first attempted to challenge that order "by way of a Rule 54(b) appeal before seeking mandamus relief." ____ So. 3d at ____. For the reasons stated below, I believe that mandamus review was properly sought in accordance with our caselaw and, thus, that we should address the propriety of the Shelby Circuit Court's abatement decision.

<u>Why the Mandamus Petition Should be Granted</u>

<u>A. The Majority Opinion's Conclusion is Inconsistent with Our Court's Precedent Addressing Situations that Are Subject to Mandamus Review</u>

Over the years, our Court has provided a nonexhaustive list of situations for which we have held that a petition for the writ of mandamus is an appropriate means of review. We listed some of those situations in <u>Ex parte U.S. Bank National Ass'n</u>, 148 So. 3d 1060 (Ala. 2014). Among those situations is a ruling on a motion to dismiss an

action based on the abatement statute, like the motion at issue in this case. See 148 So. 3d at 1064.

The majority opinion points to one case -- Chiepalich v. Coale, 36 So. 3d 1 (Ala. 2009) -- in which a party whose claims against one defendant had been dismissed under the abatement statute successfully used Rule 54(b) to challenge that dismissal. However, we did not establish a bright-line rule in that case requiring that such challenges must always be pursued by interlocutory appeal under Rule 54(b) before mandamus relief can be sought.

In other words, the fact that Rule 54(b) has applied to the particular facts in a single case involving dismissal based on the abatement statute does not mean that we no longer recognize a petition for the writ of mandamus as an appropriate means for reviewing a decision granting a motion to dismiss based on the abatement statute. Such a bright-line rule would be inconsistent with our caselaw, in which we have held that such challenges are appropriately made by a petition for a writ of mandamus. See Ex parte Skelton and Ex parte U.S. Bank Nat'l Ass'n, supra.

When a situation arises that is on the mandamus list provided in Ex parte U.S. Bank National Ass'n, supra, we can grant the petition if it

meets the mandamus factors -- including that there is not "another adequate remedy" <u>under the particular facts of that case</u>. <u>Id.</u> at 1064. The majority opinion is thus mistaken to apply a bright-line prohibition for reviewing the granting of an abatement motion via a petition for a writ of mandamus. Instead, we should inquire whether there is "another adequate remedy" under the particular facts of the case.

> <u>B. An Appeal Under Rule 54(b) is Not An "Adequate Remedy"</u>
> <u>Under the Facts in This Case Because the Issues Raised in the</u>
> <u>Mandamus Petition May Be Mooted By Future Developments in</u>
> <u>the Shelby Circuit Court</u>

Here, Rule 54(b) certification would not lead to an "adequate remedy." It would not be proper to make such a certification because the issues raised in the mandamus petition may be mooted by future developments in the state-court action in the Shelby Circuit Court. <u>See</u> <u>Rogers v. Cedar Bluff Volunteer Fire Dep't</u>, 387 So. 3d 131, 136 (Ala. 2023) (quoting <u>Lightning Fair, Inc v. Rosenberg</u>, 63 So. 3d 1256, 1265 (Ala. 2010)) (explaining that a trial court <u>cannot certify</u> a judgment or order pursuant to Rule 54(b) if "'"the need for review <u>might or might not</u> <u>be mooted</u> by future developments in the [trial] court."'") (emphasis added)). Moreover, our Court has recognized that a ruling on a motion to dismiss an action based on the abatement statute should be reviewed by

41

a petition for a writ of mandamus when "there is a compelling reason not to wait for an appeal." Ex parte U.S. Bank Nat'l Ass'n, 148 So. 3d at 1065. In the present case, there is certainly a compelling reason not to wait for an appeal.

Recall that East Hampton purchased the delinquent loans at issue from ServisFirst Bank. This is the only interest that East Hampton possesses. Yet, ServisFirst Bank remains a party to the underlying case. The petitioners allege that ServisFirst Bank continues to take the "untenable position" that the loan guaranty for the $6.5 million worth of delinquent loans -- the same loans that are the subject of the claims between East Hampton and Carrick -- is enforceable against Carrick. That is why, in their state-court action, the petitioners sought a judgment declaring that the loans and the loan guaranty are unenforceable against Carrick.

The Shelby Circuit Court's resolution of this declaratory-judgment claim in favor of ServisFirst Bank would also determine whether East Hampton can enforce the delinquent loans and the loan guaranty against Carrick. After all, any claims East Hampton may bring against Carrick are wholly derivative of the claims ServisFirst Bank could have brought

against Carrick. East Hampton purchased "all of [ServisFirst Bank's] right, title, and interest in" the loans. Those loans were "purchased and sold on an 'as-is, where is' basis, with all faults and limitations, and without recourse, and without warranty or representation, express or implied, of any type, kind, character or nature." (Emphasis omitted.)

Thus, if the Shelby Circuit Court finds the loan guaranty to be illegitimate, ServisFirst Bank never had the right to enforce that agreement against Carrick. Therefore, East Hampton would likewise have no right to enforce it against Carrick because it purchased the loans with knowledge of this dispute and on an "'as-is, where is' basis." As such, the Shelby Circuit Court's abatement order "'"might or might not be mooted by future developments in the [trial] court."'" Rogers, 387 So. 3d at 136 (quoting Lightning Fair, 63 So. 3d at 1265). Based on the foregoing, a Rule 54(b) certification of the dismissal order would be improper in this procedural posture and therefore not an adequate remedy. For the very same reasons, "there is a compelling reason not to wait for an appeal" in the present case, Ex parte U.S. Bank Nat'l Ass'n, 148 So. 3d at 1065, which further underscores why the petitioners appropriately sought mandamus review here.

C. An Evaluation of the Merits of this Case Requires Granting the Mandamus Petition

Because I believe we can (and should) determine whether the Shelby Circuit Court correctly dismissed the claims against East Hampton based on the abatement statute, I must address the merits of that question -- something that the majority opinion did not need to reach.

Alabama's abatement statute forbids a party from prosecuting two actions "in the courts of this state" for the "same cause" and against the "same party." § 6-5-440. This Court has previously held that an action pending in a federal court falls within the coverage of this statute:

> "'"The phrase 'courts of this state,' as used in § 6-5-440, includes all federal courts located in Alabama. This Court has consistently refused to allow a person to prosecute an action in a state court while another action on the same cause and against the same parties is pending in a federal court in this State."'"

Ex parte Norfolk S. Ry., 992 So. 2d 1286, 1289-90 (Ala. 2008) (quoting Ex parte University of S. Alabama Found., 788 So. 2d 161, 164 (Ala. 2000), quoting in turn Weaver v. Hood, 577 So. 2d 440, 442 (Ala. 1991) (citations in Weaver omitted in University of South Alabama)).

The parties agree that the claims made in the state-court action

44

arise out of the same transaction or occurrence underlying the claims in East Hampton's federal-court action. In fact, East Hampton concedes the following in its answer:

> "There can be no dispute that Carrick's claims against East Hampton <u>arise out of the exact same transaction and occurrence</u> that is the subject matter of the Federal Action.
>
> "Petitioners' new claims against East Hampton asserted in the Third Amended Complaint are <u>necessarily dependent on East Hampton's status as assignee of the Bank's interest in the Loan and related documents</u>. All of the claims asserted against East Hampton arise out of the same transaction or occurrence as East Hampton's Guaranty claim …."

East Hampton's answer at 12.

Likewise, the parties also agree that, under Alabama law, the key legal question here is which action was "first-filed." However, they strongly disagree about which action was first-filed. On the one hand, the petitioners claim that they filed their action contesting the validity of the loan guaranty long before East Hampton's action. By purchasing the delinquent loans from ServisFirst Bank, the petitioners argue, East Hampton injected itself into their state-court action in the Shelby Circuit Court and, thus, was already subject to their claims that the loan guaranty had been forged and was unenforceable. It was only after it purchased the delinquent loans, the petitioners note, that East Hampton

filed its federal-court action in the United States District Court for the Northern District of Alabama seeking to enforce that very same loan guaranty.

On the other hand, East Hampton argues that the federal-court action -- the first action in which it was a party -- is the action that should be considered "first-filed" because, it says, its claim against Carrick only arose after the loans had matured and became due and payable on June 23, 2023. Before that, East Hampton contends, this claim was not even ripe for assertion by ServisFirst Bank as a counterclaim in this state-court action. See East Hampton's answer at 12-13 ("East Hampton's claim on Carrick's Guaranty only arose after the Loan had matured and became due and payable on June 23, 2023, prior to which it was not even ripe for assertion by the Bank as a counterclaim in this case" (emphasis added)); id. at 14 ("Even though he added the Bank as a party, Carrick's declaratory judgment claim was not yet ripe, making any 'privity' between the Bank and East Hampton irrelevant.").[6]

---

[6]This Court has held that the obligation to assert compulsory counterclaims makes the defendant with a compulsory counterclaim a "plaintiff" in the first action for the purposes of the abatement statute as of the time of the commencement of the first action. Clark v. Wells Fargo Bank, N.A., 24 So. 3d 424, 427 (Ala. 2009) (citations omitted). "'"Thus,

In my view, there is no doubt which action was first-filed -- the state-court action. To begin with, East Hampton is factually wrong about its ripeness argument. Contrary to its assertions here, East Hampton alleged several times in its federal complaint that Carrick's obligations under the loan guaranty matured in 2022 -- not 2023 -- long before the sale of the loans to East Hampton and long before East Hampton filed its federal-court action. For instance, in its federal complaint, East Hampton alleged:

- "The Note matured by its terms and all amounts loaned to the

---

the defendant subject to the counterclaim rule who commences another action has violated the prohibition in § 6-5-440 against maintaining two actions for the same cause."'" Id. (quoting Ex parte Norfolk S. Ry., 992 So. 2d 1286, 1290 (Ala. 2008)). "[A] compulsory counterclaim is considered an 'action' for purposes of § 6-5-440." Ex parte Norfolk S. Ry., 992 So. 2d at 1289 (citing Penick v. Cado Sys. of Cent. Alabama, Inc., 628 So. 2d 598, 599 (Ala. 1993)). A counterclaim is compulsory if "'"(1) its trial in the original action would avoid a substantial duplication of effort or (2) the original claim and the counterclaim arose out of the same aggregate core of operative facts."'" Ex parte Hayslip, 297 So. 3d 381, 388 (Ala. 2019) (quoting Ex parte Cincinnati Ins. Cos., 806 So. 2d 376, 380 (Ala. 2001), quoting in turn Ex parte Canal Ins. Co., 524 So. 2d 582, 584 (Ala. 1988)).

East Hampton argues that the obligation of Carrick to assert compulsory counterclaims in the federal-court action meant that Carrick's addition of East Hampton to the state-action made it the second-filed action. Carrick's argument is the converse -- that is, that the obligation of ServisFirst Bank to assert compulsory counterclaims in the state-court action made it the first-filed action.

47

Borrowers by the Bank became immediately due and payable on <u>June 23, 2022</u>. The Borrowers and Carrick as guarantor were in default under the Loan Agreement and related documents for, among other things, failing to pay the amounts due and owing to the Bank."

- "On July 26, 2022, the Bank and the Borrowers entered into a Forbearance Agreement under which the Bank agreed to forbear from exercising any remedies available to it under the Loan Agreement and related documents until October 23, 2022, <u>except as to Carrick's obligations under the Guaranty, which were expressly excluded from the Forbearance Agreement</u>."

- "The forbearance period agreed to under the Forbearance Agreement was extended to February 28, 2023, by an amendment dated November 4, 2022. On February 28, 2023, the parties amended the Forbearance Agreement a second time, extending the forbearance period to June 1, 2023. <u>Carrick's obligations under the Guaranty continued to be expressly excluded from the Forbearance Agreement</u>."

(Emphasis added.)[7] ServisFirst Bank made similar representations in a demand letter stating that the loans had matured "on June 23, 2022."

Additionally, East Hampton is wrong on the law. First, it does not cite a single case holding that, when a counterclaim is allegedly not yet "ripe," the earlier-filed action should be ignored. To state the obvious, the earlier-filed action -- making the exact same allegation about the exact

_____

[7]East Hampton's own actions also contradict its argument. It filed its federal-court action on June 12, 2023, but it now asserts that the loan guaranty had not even matured until June 22, 2023.

same loan guaranty -- was filed earlier. Second, even if we assumed that ServisFirst Bank's counterclaim on the loan guaranty was not yet ripe, it immediately became a compulsory counterclaim to Carrick's declaratory-judgment claim when the loans actually did mature, thus further supporting the conclusion that the state-court action was first-filed. Third, East Hampton does not point to any assertions made by anyone in the state-court action -- that is, no motions, rulings, or affirmative defenses -- before the sale of the loans that the claims about the loans and loan guaranty were not yet ripe. I therefore am unpersuaded by East Hampton's assertions here.

Moreover, our Court has recently explained that when a transfer of interest occurs, pending litigation against the original party will be binding on the successor in interest, even if the successor is not formally added to the case. See Martin v. Scarborough, [Ms. SC-2023-0904, Nov. 22, 2024] ____ So. 3d ____ (Ala. 2024) (allowing action to continue against BBVA even though its successor in interest, PNC Bank, was not a party to the underlying case). Indeed, a transfer of interest that results from the joinder or substitution of a party and that occurs subsequent to the commencement of the action, like the transfer of interest in this case

following the addition of East Hampton to the state-court action, is governed by Rule 25(c), Ala. R. Civ. P. See American Credit Co. of Alabama, Inc. v. Bradford, 414 So. 2d 119 (Ala. Civ. App. 1982).[8]

When East Hampton purchased the delinquent loans from ServisFirst Bank, it also purchased ServisFirst Bank's obligations related to those loans. In other words, ServisFirst Bank's interests in the loans were transferred to East Hampton. Just as ServisFirst Bank is required to bring its claims regarding the loan guaranty in state court, East Hampton, as ServisFirst Bank's successor in interest, is also

---

[8]Similarly, Rule 25(c), Fed. R. Civ. P., allows an original action to continue when the real party in interest changes, rather than requiring the initiation of an entirely new action. See, e.g., ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc., 53 F. 3d 186, 191 (8th Cir. 1995) (noting that Rule 25(c) "provides substitution procedures for an action that does survive" a transfer of interest). Although Alabama courts may not have addressed this issue, federal courts have addressed this issue and have concluded that the assignment of a loan is a "transfer of interest" under Rule 25, Fed. R. Civ. P. See, e.g., Christiana Tr. v. Riddle, 819 F. App'x 255, 256 (5th Cir. 2020); DZ Bank AG Deutzche ZentralGenossenschaftsbank v. Davis, No. 6:09-cv-1214-Orl-19DAB, Dec. 1, 2009 (M.D. Fla. 2009) (not reported in Federal Supplement) (granting a Rule 25(c) substitution based on a "Loan Sale Agreement" transferring the "right, title, and interest in the Defendant's Loan"). I note that Rule 25(c), Ala. R. Civ. P., is virtually identical to its federal counterpart, and, "[a]s a general rule, … we look at the construction placed on the Federal Rules of Civil Procedure by the Federal courts in order to interpret the … Alabama Rules of Civil Procedure." Thomas v. Liberty Nat'l Life Ins. Co., 368 So. 2d 254, 256 (Ala. 1979).

required to do so. As explained above, the resolution of Carrick's claims against ServisFirst Bank or East Hampton in state court would preclude East Hampton's claims against Carrick in federal court. See Ex parte Brooks Ins. Agency, 125 So. 3d 706, 708 (Ala. 2013) (stating that "[t]he application of the abatement statute 'is guided by "whether a judgment in one suit would be res judicata of the other"'") (quoting Chiepalich, 36 So. 3d at 3). Based on the foregoing, I believe that the Shelby Circuit Court erroneously granted East Hampton's motion to dismiss based on the abatement statute.

### What Now?

As noted above, the majority opinion never reaches the question of whether abatement should -- or should not -- have been granted. Because of this (and because the dismissal order was not a final judgment), the trial judge retains the jurisdiction to reconsider the abatement ruling, and I urge the trial judge to do so.

There is a second option. To correct what I believe is a mistake, the majority opinion holds that the petitioners should have pursued an interlocutory appeal under Rule 54(b). The petitioners are thus free to now file a request with the Shelby Circuit Court to make a Rule 54(b)

certification of the dismissal order.  However, as I indicate above, I believe such a certification would be improper.  Assuming the filing and denial of such a request, perhaps the petitioners could then file a mandamus petition with our Court. In fact, the majority opinion seems to acknowledge this and states that the petitioners should act "by way of a Rule 54(b) appeal <u>before</u> seeking mandamus relief." \_\_\_\_ So. 3d at \_\_\_\_ (emphasis added). I read the majority opinion's use of the word "before" as indicating that mandamus relief would be available after an unsuccessful attempt at a Rule 54(b) certification (assuming that the other requirements for mandamus were met).

Unless something changes, there will be a race to judgment between the federal court and the state court.  It will also be far more difficult to manage this litigation with proceedings moving forward in different forums, leading to even more motion practice and likely further procedural maneuvering.[9]  This is very unfortunate -- especially in a case

---

[9]The petitioners assert that the federal court may lack subject-matter jurisdiction because of the "citizenship" of East Hampton.  Our Court is not in the position to rule upon the subject-matter jurisdiction of a federal court in an ongoing matter.  If the federal-court action is dismissed, perhaps the petitioners can again add East Hampton to this action.

of this complexity. The majority opinion does a fine job of painting the complexity of this action for the purposes of deciding the limited issues before us, but its brief discussion only scratched the surface of the complexity and intensity of this action, including the sheer number of filings reflected in AlaCourt. Given this situation, I urge the Shelby Circuit Court and the United States District Court for the Northern District of Alabama to attempt to coordinate with each other to promote judicial economy and ameliorate possible conflicting results.

## Conclusion

For the foregoing reasons, I believe that this Court should grant the petition for a writ of mandamus and order the Shelby Circuit Court to vacate its order granting East Hampton's motion to dismiss based on the abatement statute. I therefore respectfully dissent.[10]

---

[10]Additionally, I note that it appears to me that the Shelby Circuit Court has not yet determined whether Carrick and McAllister can fairly and adequately represent the interests of the Cazboy's companies, Last Word Liquidators, and their other members. At an appropriate time before trial, the Shelby Circuit Court should decide whether Carrick and McAllister satisfy the requirements for maintaining a derivative action set forth in Rule 23.1, Ala. R. Civ. P.